*Norman Shattuck,* for plaintiff. *Denny & Wright,* for defendant.

---

ELLISTON, trustee, etc., *v.* ATLANTIC STATES WAREHOUSE COMPANY *et al.*

1. Properly construed, the amended grounds of the motion for new trial are but an elaboration of the general grounds.

2. The findings of fact by the trial judge, to whom the case was submitted for determination, are supported by the evidence.

3. The general rule, where cotton is stored in a warehouse, is that the relation of bailor and bailee is created between the owner of the cotton and the warehouseman. The fact that by special contract the cotton is placed in a separate compartment, for which a yearly rental is paid by the bailor for a stated term, and that the bailor is allowed access to the same, and for which negotiable warehouse receipts are issued, does not create the relation of landlord and tenant, under the facts of this case.

4. Where in a case as just stated a warehouse receipt given to one for certain cotton stored with a warehouse company is assigned to another person, upon the delivery of such receipt the warehouseman, though he has no notice of the transfer, becomes the bailee of the person receiving such receipt.

5. Under the evidence the trial judge was authorized to find that while the cotton in controversy was bought in the name of the Georgia Products Co., it was in fact and in law bought and deposited with the Atlantic States Warehouse Co. by Barrett & Co. Inc.

6. The question in the present case is not one involving a warehouseman's lien for storage charged, but it is a question arising where the first holder of a warehouse receipt has assigned the receipt, and a complete

settlement is made between the original holders of the warehouse receipt, or its assignees, and the warehouse company; and on this question the judge was authorized to find that the warehouse company had settled in full with the holders of the warehouse receipt, and that whatever cotton was left on hand in the warehouse was the property of the warehouse company as between the warehouse company and the claimants of the cotton in the present case.

Nos. 4546, 4547. APRIL 15, 1925.

Equitable petition. Before Judge Franklin. Richmond superior court. September 18, 1924.

On July 20, 1923, the Atlantic States Warehouse Co. filed its equitable petition against Phinizy & Co. et al., for receiver and interpleader, stating in substance that it was a public warehouse, storing cotton and issuing warehouse receipts; that Barrett & Co. Inc. had on deposit for storage about 2500 bales of cotton, for which the Warehouse Co. had issued receipts for delivery to Barrett & Co. upon payment of charges, which receipts had been transferred by Barrett & Co. to various creditors who were calling for the cotton; that Barrett & Co. was insolvent; that by the negligence or fault of its former manager much confusion existed in the marks of the cotton, and the Warehouse Co. was apprehensive it might not have the identical bales called for by the receipts, and some of the holders of these receipts were demanding the number of bales regardless of whether they were identical with those specified in the receipts, in order to save themselves from loss; that the Warehouse Co. was ignorant of the right of the various claimants, and indifferent between them; and was ready to deliver all cotton in its possession stored by Barrett & Co. to whomsoever the court might direct; and it prayed that all claimants be required to interplead in that suit. The court appointed Gercke receiver of the Atlantic States Warehouse Co. On July 28th, 1923, the Warehouse Co. amended its petition, alleging, that it had on storage only a few hundred bales belonging to customers of Barrett & Co.; but had a large number of other bales originally the property of Barrett & Co., but now the property of the Warehouse Co.; the basis of claim being that through the connivance of its manager, O'Keefe, Barrett & Co. withdrew the cotton described in the receipts, without calling in the receipts, which remained outstanding as obligations of the Warehouse Co.; that when making such withdrawals Barrett & Co. delivered and transferred to the Warehouse

Co., bales equal in number, but of lower grade, and lesser weight and value; that in the 300 bales of customers' cotton the Warehouse Co. did not claim full title, but only the interest of Barrett & Co. consisting of lien for advances, storage, insurance, etc.; that the cotton substituted by Barrett & Co. was held by the Warehouse Co. as security and indemnity on outstanding receipts, calling for cotton no longer in its possession. The prayer was that the receiver be given authority to sell the substituted cotton, preserving proceeds of sale, marks, weights, grade, value, etc., of each bale. An order granting this prayer was signed without prejudice to the rights of others.

On November 14, 1923, Elliston, trustee in bankruptcy of Georgia Products Co., presented his petition for intervention, asking that 240 bales of sea-island cotton (as per list attached) in possession of the receiver be delivered to him upon payment of legal charges for storage, etc. To that petition the Warehouse Co. made answer, admitting possession of the 240 bales, but denying ownership in the Georgia Products Co., and claiming ownership in itself to protect against liability on outstanding receipts; also averring that the Georgia Products Co. was not a legal corporation, and was practically owned and controlled by Barrett & Co. The answer further averred that the Warehouse Co. had a "course of dealing" with Barrett & Co., by which Barrett & Co. was allowed to withdraw any bales regardless of identity, weights, grades, value, etc., and that all bales not withdrawn were held in storage to indemnify the Warehouse Co. against outstanding receipts, and that the 240 bales were held for that purpose. The answer then proceeded to give figures showing that the Warehouse Co. would sustain a possible loss of about $87,000, should it lose the 240 bales, and that the Warehouse Co. continued to permit Barrett & Co. to use various receipts, each designating a different number of bales, as long as Barrett & Co. had in pledge and in its possession either enough bales against which no receipts had been issued, "or in lieu thereof having pledged other certificates, warehouse receipts, compress receipts, or railroad bills of lading, or other symbols representing cotton." At this stage of the pleadings, Elliston, trustee in bankruptcy of Barrett & Co. Inc., filed his intervention, alleging that he was advised that the claim of the Georgia Products

Co. to said 240 bales was superior to the claim of Barrett & Co., but, in the event the court should hold that he as trustee in bankruptcy of the Georgia Products Co. was not entitled to the 240 bales, he claimed that he was entitled to the 240 bales as trustee in bankruptcy of Barrett & Co. Inc., upon payment of legal charges, and asked that the cotton be delivered to him as trustee of Barrett & Co., the basis of his contention being that his claim as trustee of either or both of said bankrupts was superior under the bankruptcy law to any claim of the Warehouse Co., except as to the lien allowed warehousemen for storage and other legal charges; and that any indebtedness due by Barrett & Co. to the Warehouse Co., arising on illegal issuance or surrender of the warehouse receipts as set out in the answer, could give the Warehouse Co. no lien or claim prior to that of the trustee in bankruptcy, but left such warehouseman in the position of a general creditor against said bankrupt for such general claim.

To the intervention of Elliston, trustee for Barrett & Co., the warehouse company filed its answer, substantially in the same terms as the answer already filed to the intervention of Elliston, trustee of the Georgia Products Co. To the answers of the Atlantic States Warehouse Co., Elliston, as trustee for the Georgia Products Co., filed his demurrer upon the following grounds: (1) Said answer sets out no legal defense against the petition for intervention. (2) It appears on the face of said answer that the 240 bales of cotton in controversy were held by said Atlantic States Warehouse Co. in its capacity as warehouseman, and it appears from the petition of the intervenor that a continuing tender has been made of the storage charges and other legal charges on said cotton, and that said Warehouse Co. makes a claim to said cotton to repay it for losses arising out of receipts illegally issued and cotton surrendered by said Warehouse Co., in co-operation with Barrett & Co. Inc., or the officers of Barrett & Co., and the damages suffered in consequence of the issuing of such receipts could not in law constitute a claim superior to the claim of the trustee in bankruptcy of either the Georgia Products Co., or of Barrett & Co. Inc., since the lien of a warehouseman is confined to his storage charges and items of a similar nature, and does not extend to general indebtedness as against a trustee in bankruptcy representing the general creditors. (3) It appears on the face of the answer that

the Atlantic States Warehouse Co. issued receipts in the name of the Georgia Products Co., and dealt with it as a corporate existence. (4) The allegation in said answer, seeking to set up an understanding between the Warehouse Co. and Barrett & Co. in regard to said 240 bales of cotton being held by the Warehouse Co. as collateral to indemnify it against losses from the issuance of illegal receipts, has no legal binding force as against a trustee in bankruptcy representing the unsecured creditors of either the Georgia Products Co. or Barrett & Co. Inc. At the same time Elliston, trustee for Barrett & Co., filed his demurrer to the answer of the Warehouse Co., upon grounds identical with the foregoing, except that paragraph 3 was omitted as having no relevancy.

By consent of counsel, all issues of law and fact involving all the pleadings were submitted to the judge without the intervention of a jury. While the judge held the papers under consideration, the Warehouse Co. again amended its answer, repeating some of the statements already made, and averring that, for some eight months before the appointment of a receiver, Barrett & Co. Inc. had required the Warehouse Co. to furnish a written report showing the number of bales of cotton on hand, withdrawals, etc., and the number of receipts outstanding; that the holding of said 240 bales of cotton by the Warehouse Co. was a pledge to it, and clothed it with all the rights of a bailee or pledgee for value against its liability on the outstanding receipts; that the receipts had been assigned to innocent purchasers, and no right, or title whatever remained in Barrett & Co., or in the Ga. Products Co., to the cotton including the 240 bales; and that because the Warehouse Co. had been compelled to pay out money to redeem its receipts, it became thereby subrogated to all the rights of said holders of said warehouse receipts. On June 14, 1924, the judge filed a decree, overruling the demurrers of the intervenors to the answer of the Warehouse Co., and awarding the 240 bales of cotton to the Warehouse Co. The intervenor filed his exceptions pendente lite to the overruling of his demurrers. He filed motions for new trial on the grounds that the judge's finding was contrary to law and to the evidence, and without evidence to support it. The motion alleges that the judge erred: In holding that the Georgia Products Co. was merely the instrumentality or agency of Barrett & Co. Inc., which was used by Barrett & Co. as a convenient means for carry-

ing on their enormous business; and that said 240 bales of cotton which was stored in said warehouse at the time of such storage, and under the circumstances and conditions as disclosed by the evidence in this record, was the cotton of Barrett & Co. Inc., it appearing from the evidence that the Georgia Products Co. was a separate corporation and was dealt with as such by Barrett & Co. and by business men and warehouses generally, and was dealt with as such by the Atlantic States Warehouse Co. itself, which issued to it, in its own name, receipts at different times for thousands of bales of cotton. The 240 bales of sea-island cotton was bought in Savannah by the Georgia Products Co., and was shipped to Augusta, consigned to the Georgia Products Co., and was paid for by the Georgia Products Co., out of the funds standing to its credit on the books of Barrett & Co., and was received by the Warehouse Co. with full knowledge that the Georgia Products Co. was the consignee at Augusta. The Georgia Products Co., in connection with its export business, borrowed from the World Finance Corporation, and from the Bank of Charleston, millions of dollars in its own name, based on cotton owned by it.

Said verdict-judgment, as movant claims, in its relation to the trustee in bankruptcy, is against the law and the evidence, and without evidence to support it, in holding that the Warehouse Co. was and is entitled to hold all of the said cotton in its possession, including the 240 bales in controversy, as the cotton of Barrett & Co., to satisfy its liability on said outstanding negotiable warehouse receipts which the Warehouse Co. had issued to Barrett & Co.; and that the rights of the Warehouse Co., as a bailee or pledgee of said cotton, are superior in law and equity to the rights of the Georgia Products Co., or its trustee in bankruptcy, or of Barrett & Co., or its trustee in bankruptcy; it appearing, as movant claims, that the written contract between the Warehouse Co. and Barrett & Co. does not established the relation of bailee and bailor, or pledgee and pledgor, but of landlord and tenant; and that the trustee in bankruptcy, under the amendatory act of 1910, stands in the position of a judgment creditor as of the date of filing the petition, with fi. fa. unsatisfied as to any property of the bankrupt not in the custody of the court. Against this lien of the trustee in bankruptcy, the Warehouse Co., under the law and the facts, could have no superior right, because:   (a) As landlord, it levied no dis-

tress warrant to give it a lien. (b) As warehouseman, or bailee or pledgee, it had no lien except for storage charges, etc., and such charges were tendered in court.. (c) The. alleged "course of dealing" in issuing false receipts in certain marks, and in holding other bales as indemnity, can not constitute a lien superior to that of the trustee in bankruptcy on the 240 bales of cotton. · Even though there was in existence that illegal practice of delivering "bale for bale," regardless of marks, weights, and value (which practice the verdict-judgment says had prevailed for 15 years), yet the written contract dated Sept. 17, 1921, not only failed to provide for or permit the continuance of that illegal practice, but actually put an end to it, by expressly providing that "assignable receipts will be issued against cotton in store," thus excluding the issuance of receipts for cotton not in store. Even under such alleged "course of dealing," there was no such contractual relation between the Warehouse Co., and the Georgia Products Co. or Barrett & Co., as would constitute a pledge or bailment, giving a lien on the 240 bales of cotton for the loss sustained by the Warehouse Co., by reason of its issuance of illegal receipts—there being no deposit or exclusive possession of said 240 bales of cotton in said warehouse, since the testimony shows the cotton could not be moved without the consent of Barrett & Co., and remained stored in the compartment rented by Barrett & Co., for which Barrett & Co. was to pay a fixed rental, even if no cotton at all was stored.

Furthermore, said verdict-judgment recites, as a finding of fact, that at the time the receiver in this case was appointed there were 2627 bales of cotton on hand, and that the outstanding receipts amounted to only 2577, thus leaving a margin of 50 bales that were not necessary to cover outstanding receipts on the "bale for bale" theory; and as to that 50 bales, the defense fails completely. The alleged contract by "course of dealing" was in effect that the Warehouse Co. was to issue receipts in the name of Barrett & Co., or in the name of any one else, as requested by Barrett & Co., for a stated number of bales of cotton, with specified marks thereon, such as "100 bales of cotton marked as follows: UU 201 to 300 inc.," which receipts provided that the "above cotton" was to be delivered "only upon the surrender and cancellation of this receipt and payment of all charges thereon;" that the Warehouse

Co. was to issue such receipts on request, even though there was no cotton in the warehouse so marked and numbered; and, as against loss sustained by such illegal practice, the Warehouse Co. was to hold all cotton in the warehouse as an indemnity, and could discharge its obligation under such receipts by delivering "bale for bale," that is, any bale for any other bale, regardless of ownership, number, quality, or time of receipt or delivery. Such a contract could not constitute a pledge or bailment, so as to give a lien for any sum at all, certainly not beyond storage and similar charges, because, (a) It was too indefinite, in that the thing pledged was not specifically designated, and the debt indemnified against was without limit as to time or place. (b) The existence of the alleged contract is disproved, and the Warehouse Co. is estopped from setting up any rights thereunder, by reason of having made sworn proof in judicio, in the bankruptcy court on March 28, 1924, in the case of O'Keefe, bankrupt, he being the superintendent of the Warehouse Co. and the officer who issued the illegal receipts, in which sworn proof it was alleged that O'Keefe was indebted to the Warehouse Co. in the sum of $126,978.97, loss caused to it by the "frauds and dishonesties" of O'Keefe in connection with the issues of receipts calling for "bales of cotton, without the cotton described in such receipts being in said warehouses, or in the possession or control of said Warehouse Co.;" and "allowing Barrett & Co. to withdraw from said warehouses the cotton called for by certain receipts, without surrendering or canceling such receipts," the fraudulent acts so complained of being the same acts constituting the basis of the indebtedness against which the Warehouse Co. claims to hold the 240 bales of cotton as indemnity. These charges of fraud, based on tort, are an estoppel against the Warehouse Co. now claiming there was a contract in existence in accordance with which the acts were done. The alleged contract would, if established, be void in law, as being immoral and against public policy. The course of business according to the alleged contract was that Barrett & Co., the renters of named compartments in the warehouse, were to store cotton with the Warehouse Co., each party to check in cotton as received, and check it out as shipped. The Warehouse Co. was to issue its receipts on regular printed forms, stating that it held a specified number of bales, with specified marks, when as a matter of fact it did not have on hand bales

with those marks, or the number of bales in the receipt, the shortage running from a few bales up to more than 5,000 bales. The receipt specified the bales by giving the marks, such as UU or G, or WW, etc., when there were no bales containing such marks, and that such marks, under the testimony of Martley, witness for the Warehouse Co., "meant nothing" at the warehouse, and were used to "get around the banks." The Warehouse Co. knew that Barrett & Co. were cotton factors, holding cotton belonging to patrons whose property they had no right to pledge; and the Warehouse Co. knew that Barrett & Co. were using bogus receipts to borrow money on. This entire scheme of operation was immoral and against public policy. As an indication of the public policy of the State, the following extract is taken from the Acts 1918, page 246, section 16, establishing a State warehouse department: "The manager of any warehouse, or agent or employee or servant, who issues or aids in issuing a receipt for cotton, knowing that such cotton has not been actually placed in the warehouse under the control of the manager thereof, shall be punished for each offense, by imprisonment in the State penitentiary for a period of not less than one nor more than five years, or by a fine not exceeding $5,000."

Said verdict-judgment, as movant claims, is against the evidence and without evidence to support it and against the law in holding that this assignment and transfer of warehouse receipts conveyed to such holders "all the right, title, and interest, which Barrett & Co. Inc., or its agency, the Georgia Products Co., held in said cotton, . . and no judgment under the bankruptcy statute in favor of the trustee in bankruptcy attached to said cotton or any interest therein as the property of Barrett & Co. or either the Georgia Products Co.," the error being: (a) In making the transfer of the receipts apply to any other cotton than that specified in the receipts. (b) In holding that the lien of the trustee in bankruptcy as of the date of filing the bankruptcy proceedings did not attach to all cotton not specifically covered by the receipts outstanding. Said verdict-judgment, as movant claims, is against the law and the evidence and without evidence to support it, in holding that if the contention that the method of operation in connection with the receipts is immoral or contrary to public policy was sound, the doctrine of in pari delicto would

apply, the error being in holding that the trustee in bankruptcy, representing defrauded creditors, and holding a judgment lien in their favor as of the date of bankruptcy, is in pari delicto with the bankrupt company itself. .The defrauded creditors who will get the benefit of the 240 bales were in no way connected with the dereliction of Barrett & Co., except that they were the innocent victims thereof. The Warehouse Co., according to the pleadings and the evidence, co-operated and conspired with Barrett & Co. to carry on the business of issuing bogus receipts, and one of these conspirators now seeks to set up a lien on the property of the other, to indemnify it against loss sustained in the illegal transaction, and that too, not against the co-conspirators, but against the trustee in bankruptcy, representing the defrauded creditors. If none but honest receipts had been issued, there could have been no loss to the Warehouse Co.

The motion for new trial in each case was overruled, and each intervenor excepted separately.

*Archibald Blackshear* and *William H. Fleming,* for plaintiff in error.

*Hamilton Phinizy* and *Callaway & Howard,* contra.

HILL, J. (After stating the foregoing facts.)

1. These two cases were tried together and submitted to the trial judge to pass upon all the issues of law and fact, without the intervention of a jury. Both cases were tried upon the same evidence, and the court made a written opinion and entered one judgment in both cases, as follows: "1. The demurrer of the trustee in bankruptcy for the Georgia Products Co. to the answer of the warehouse company is hereby overruled. 2. The relief prayed for in the intervening petition of the trustee in bankruptcy for the Georgia Products Co., to wit, the recovery of the 240 bales of cotton, is hereby refused and denied. 3. The demurrer by the trustee in bankruptcy for Barrett & Co. Inc., to the answer of the warehouse company, is hereby overruled. 4. The relief prayed for in the intervening petition of the trustee in bankruptcy for Barrett & Co. Inc., to wit, for the recovery of the 240 bales of cotton, is hereby refused and denied. 5. The 240 bales of cotton described in said interventions are hereby held to be the cotton of the Atlantic States Warehouse Co., for the reasons hereinbefore stated, and will be held by the receiver in this cause to be disposed

of by said receiver under the orders of this court for the purpose of using the proceeds in indemnifying the warehouse company for the amounts which it has already paid out in satisfying said outstanding receipts."

We are of the opinion that the court did not err in overruling the demurrers to the answer of the Atlantic States Warehouse Co., and also that the court's findings of fact were authorized and supported by the evidence. The special grounds of the motion for new trial, properly construed, are included within the general grounds. This is a suit in equity, brought by the Atlantic States Warehouse Co. against Phinizy & Co. et al., praying for injunction, receiver, and to determine to whom belonged certain cotton stored in the warehouse of the plaintiff, and that the various claimants of cotton stored with plaintiff by Barrett & Co. be required to interplead concerning their respective claims. To the above suit Roy Elliston, as trustee in bankruptcy of the Georgia Products Co., and also as trustee in bankruptcy of Barrett & Co. Inc., filed interventions claiming the 240 bales of sea-island cotton. It appears from the record that the Atlantic States Warehouse Co. owned a large warehouse located in the City of Augusta, in which were a large number of compartments where cotton was stored for its customers, and for which a storage charge was made; and that the warehouse company entered into different kinds of contracts with its customers. In some cases these compartments were leased or rented to customers on a strictly rental basis, and in those cases the warehouse company had nothing to do with the handling or looking after the cotton. In the present case the warehouse company entered into a contract with Barrett & Co. Inc., under the terms of which Barrett & Co. Inc. agreed to pay to the warehouse company the sum of $750 per compartment per annum for nineteen compartments during the period of the life of the contract. The warehouse company bound itself to receive the cotton of Barrett & Co. Inc., and to store it in the particular compartments designated in the contract, and to hold the cotton; and the warehouse company "shall not insure against loss or damage, by fire or otherwise, the said cotton so to be stored, and that its liability is only that of a warehouseman. Assignable receipts will be issued against cotton in storage."

Barrett & Co. Inc. was a corporation acting as a cotton factor

and received cotton as such from its customers, and was also engaged in buying, selling, holding, and exporting cotton in large quantities.  The Georgia Products Co. was a corporation chartered in 1920, but the record shows that no stock was ever issued by the Georgia Products Co., but that Barrett & Co. Inc. subscribed for the entire $250,000 of its capital stock; that the Georgia Products Co. kept no books of account, and that such accounts or entries as were made for it or against it were entered on the books of Barrett & Co. Inc.  Frank H. Barrett, the president of Barrett & Co. Inc., was the chief operating officer of that corporation, and held the same position with the Georgia Products Co.  Thos. Getzen was the secretary of Barrett & Co. Inc., and was also the secretary of the Georgia Products Co.; and the other nominal officers of the Georgia Products Co. were employees of Barrett & Co. Inc.  It also appears that the Georgia Products Co. had no paid-up capital. It bought cotton in its own name, but never received the proceeds of any cotton sold in its name, but Barrett & Co. Inc. received the proceeds of all sales, and the transactions between the Georgia Products Co. and its customers were entered on the books of the Georgia Products Co., kept on the books of Barrett & Co. Inc.; and these entries were mainly kept by cross-entries, that is to say, the Georgia Products Co. would be charged with the cost of a transaction, and when the cotton was sold it was not credited with the proceeds of the sale, but the cross-entry was made on the books of Barrett & Co. Inc., crediting the amount which had been originally charged.  In these circumstances, and those detailed in the record, we are constrained to hold that Barrett & Co. Inc. and the Georgia Products Co. were one and the same, notwithstanding the fact that the name of the Georgia Products Co. was frequently used by Barrett & Co. for the purpose of buying and selling cotton, etc.   There was never a complete organization of the Georgia Products Co., and at most it was a mere de facto organization.

We are also of the opinion that the relation existing between the Atlantic States Warehouse Co. and Barrett & Co. Inc. was not a mere relation of landlord and tenant, where the title to the property remained in the tenant; but that when the warehouse company issued assignable receipts under the contract against cotton stored with it, its liability under the contract was that of a warehouseman, or that the relation between the parties was that of bailor

and bailee, and that when Barrett & Co. Inc. had stored with the warehouse company cotton which had been assigned by Barrett & Co., the warehouse company could not be required to deliver the cotton to Barrett & Co. until the receipts were produced either by itself or by its assignees; and where it appears, as in this case, that such receipts had been assigned and that the warehouse company had paid off to the holders of those receipts represented by them, the warehouse company was subrogated to the rights of the holders of those receipts, and that whatever cotton remained in the warehouse belonged to the warehouse company, as between the warehouse company and Barrett & Co. Inc., or the assignees of those receipts. See 27 R. C. L. 953, where it is said: "Under the generally accepted definitions of bailment it is well settled that when goods are stored in a warehouse the relation of bailor and bailee is created between the owners of the goods and the warehouseman. The fact that the goods are placed in a separate room and that the bailor is allowed the key to the room does not make the relation that of landlord and tenant." And see *Citizens Banking Co.* v. *Peacock,* 103 *Ga.* 171 (2, 3, 4) (29 S. E. 752); Trainer v. Saunders, 19 A. L. R. 861 (270 Pa. 451, 113 Atl. 681); Reading Trust Co. v. Thompson, 254 Pa. 333 (98 Atl. 953); Safe Dep. Co. v. Pollock, 85 Pa. 391 (27 Am. R. 660); 1 Am. Neg. Cas. 567; National Safe Dep. Co. v. Steed, 250 Ill. 584 (95 N. E. 973, Ann. Cas. 1912B, 430).

From the foregoing we reach the conclusion that whether this cotton in controversy was deposited in the name of Barrett & Co. Inc. or in the name of the Georgia Products Co. by the same controlling head of both corporations, the relation between the parties was such that the warehouse company and Barrett & Co. Inc. understood that the warehouse company was liable to Barrett & Co. Inc. for the value of the cotton; and when the warehouse company paid either Barrett & Co., or the holders of the receipts issued to Barrett & Co. Inc. by the warehouse company, no one then had any claim against the warehouse company on account of any cotton stored there by either Barrett & Co. Inc. or by the Georgia Products Co.; and therefore the trustee in bankruptcy can not recover such cotton, or the value thereof, for either of them.

*Judgment affirmed. All the Justices concur.*