Alma E. Zweeres *v*. Amede T. Thibault.

November Term, 1941.

Present: Moulton, C. J., Sherburne, Buttles, Sturtevant and Jeffords, JJ.

Opinion filed January 6, 1942.

*P. C. Warner* for defendant.

*P. W. Hobart* for plaintiff.

SHERBURNE, J. In this action the plaintiff alleges that under a contract of storage with the defendant as a bailee for hire she delivered her household furniture to him, and that through his negligence as bailee such furniture was injured by moisture and rats. Verdict and judgment were for the plaintiff, and the case comes here upon the defendant's exceptions.

At the close of all the evidence the defendant moved for a directed verdict upon a large number of grounds, which the defendant's brief summarizes into five, as follows: 1. That the relation between the parties was that of landlord and tenant. 2. That the evidence fails to establish a relationship of bailee for hire on the part of the defendant. 3. That there is no evidence to show that any act of the defendant caused the damage to plaintiff's furniture. 4. That there was no agreement to return the furniture in the same condition in which it was received, so that mere proof of damage when the goods were taken out is not sufficient for a recovery. 5. Contributory negligence on the part of the plaintiff. The motion was overruled and defendant excepted.

The evidence taken most favorably to the plaintiff tended to show the following facts: The defendant operates a second-hand furniture store in St. Albans, and owns the so-called Lanier building adjacent to the south of his store. The ground floor of this building is divided east and west by a thin board partition, and the north half is divided by a similar partition into a front room and a back room. This front room had been sometimes used as a store or shop. About November 1, 1939, the plaintiff inquired of the defendant if he rented storage, and upon learn-

ing that he did she went and saw him, and he showed her a place in the back of his store where other furniture was stored, and she said she wanted a place where her furniture would be by itself. Then he took her into and showed her the front room in the Lanier building. She asked him if it was a good dry place and he said "Yes." She asked if he had any rats and he said he kept rat poison around all the time to make sure that he kept rid of them and that there were none. Whereupon she rented the front room to put her furniture in at a monthly rental not in advance, relying upon the defendant's skill and knowledge and his representations that it was a suitable place to store furniture. She then hired a truckman to move her furniture and told him to put it in the front room. He started to put it in the front room, but after he had placed a load or so in this room he was told by the defendant that it should go into the back room and he placed the rest there. Later the defendant, who testified that the space rented was in the back room, moved the furniture that the truckman had placed in the front room into the back room. Immediately after sending her goods by the truckman the plaintiff moved away from St. Albans, and left no forwarding address, and it was not until the next June that the defendant learned of her name and whereabouts. He then sent her a bill for rent, including a bill for one dollar for the expense of moving her furniture into the back room, which she later paid. She testified that she at all times had control whether she wanted to get her furniture out or leave it there, but never went to look at it until she took it away in October, 1940. Before taking it away the rent was adjusted and paid. When the furniture was removed considerable rat dung was observed upon it, and a number of holes had been gnawed in the upholstery by rats. In addition the furniture had been badly damaged by dampness in a way that would not result merely from storage in a cold room with a cement floor. A laundry was conducted in the south half of the ground floor of the Lanier building for about two months in the late winter or early spring of 1940, and a certain amount of water had been observed on the floor there during that time.

A bailment is the delivery of goods for some purpose, upon a contract, express or implied, that after the purpose has been fulfilled they shall be redelivered to the bailor, or otherwise

dealt with according to his directions, or kept till he reclaims them. *James Smith Woolen Machine Co.* v. *Holden,* 73 Vt. 396, 401, 51 Atl. 2. In this case it is necessary to distinguish a bailment from a lease. Where personal property is left upon another's premises under circumstances from which either relation might possibly be predicated, the test is whether or not the person leaving the property has made such a delivery as to amount to a relinquishment, for the duration of the relation, of his exclusive possession, control and dominion over the property, so that the person upon whose premises it is left can exclude, within the limits of the agreement, the possession of all others. If he has, the general rule is that the transaction is a bailment. On the other hand, if there is no such delivery and relinquishment of exclusive possession, and his control and dominion over the goods is dependent in no degree upon the co-operation of the owner of the premises, and his access thereto is in no wise subject to the latter's control, it is generally held that he is a tenant or lessee of the space upon the premises where the goods are kept. Considered from the opposite viewpoint, a tenant, but not a bailor, has the exclusive possession and control of, and dominion over, the portion of the other party's premises where the goods are kept, for the duration of the term of his lease. In a doubtful case consideration should be given to the manifested intention of the parties, whether the care of personal property or only the rental of a place to put it was contemplated. 6 Am. Jur., Bailments, Sec. 59.

We do not think the fact that the plaintiff rented the front room to put her furniture in shows conclusively that she rented a place to put it merely. We rent a safe-deposit box in a bank, and are given the only keys to it, yet it is generally held the relation with the bank is that of bailor and bailee. 6 Am. Jur. 407, Bailments, Sec. 60. If goods are stored in a warehouse, the fact that the goods are placed in a separate room and that the bailor is allowed the key to the room does not necessarily make the relation that of landlord and tenant. 27 R. C. L. 953; *Jones* v. *Morgan,* 90 N. Y. 4, 43 Am. Rep. 131; *Elliston* v. *Atlantic States Warehouse Co.,* 160 Ga. 237, 127 S. E. 744; *Patterson* v. *Wenatchee Canning Co.,* 53 Wash. 155, 101 Pac. 721. In the last case cited, a renting of a cold storage room to be used for storing beef at the consideration of $100 per month, or in

proportion to that amount according to the space used, was held to be a bailment.

 Nor does the fact that she at all times had control whether she wanted to get the furniture out or leave it determine the relation. The storage was for an indefinite time and she had a right to terminate it at any time. The defendant claims that, by payment of the charge for moving her furniture from the front room into the back room, the plaintiff ratified the defendant's understanding that her furniture was to occupy a part of the back room. Whether she knew exactly what the charge was for is not too clear, but if she did ratify the defendant's understanding, as he claims, it would be a circumstance tending to show a bailment rather than a lease, as another person kept some firewood there and she could not have had exclusive control over that room. In view of all the circumstances we think that sufficient was shown so that the jury acting reasonably could find that the relation of bailor and bailee existed.

 In the case of a bailment for hire the bailee is liable for injury to the property in case it results from his failure to exercise due care and diligence in its preservation. *Goslant* v. *Town of Calais,* 90 Vt. 114, 119, 96 Atl. 751; *Malaney & Blakey* v. *Taft,* 60 Vt. 571, 15 Atl. 326; *Gleason* v. *Beers' Estate,* 59 Vt. 581, 10 Atl. 86. This case turns upon whether the defendant exercised such care, and the plaintiff had the burden of proving that he did not exercise such care and was negligent. *Malaney & Blakey* v. *Taft, supra.* She knew that the room where the furniture was to be stored had a cement floor and was not to be heated. Hence she took the risk of such dampness as would naturally result from such a condition.

 The only evidence of anything that could have caused the damage from dampness was that concerning the laundry operations. As these were conducted by a third person, the only way the defendant could be liable therefor in this action would be because he, as owner of the building, was negligent in permitting the laundry to be installed and operated in a room therein adjoining the room where the furniture was stored, and thereby proximately caused the injury to the furniture. The defendant knew that the plaintiff expected that her furniture was to be kept in a dry room. As owner of the building he knew of the nature of the thin board partition. Measured by the

standard of the prudent man he was chargeable with the knowledge that the operation of a laundry engenders steam and moisture in the room in which it is conducted, and that the same is likely to penetrate a thin board partition into a room adjoining, as these are matters of common knowledge. As one who deals in and repairs furniture he must have known that dampness and steam are injurious to furniture. Under the circumstances it was for the jury, acting reasonably, to say whether or not the defendant had acted as a prudent man in allowing the laundry to be put into operation without first making such alterations to the partition as would have prevented its penetration by the dampness and steam resulting from laundry operations. As other furniture had been stored in the back room, both before and after the plaintiff's furniture was kept there, when no laundry was being operated, and there had been no complaints of dampness, the jury could reasonably infer that the moisture and steam from the laundry operations penetrated into the room where the plaintiff's furniture was stored and caused the damage. There was sufficient evidence to go to the jury upon this element of damages.

In view of the foregoing we need not decide whether the mere fact that the upholstery was damaged by rats is sufficient to show that the defendant was negligent in that respect, and we express no opinion thereon. To have saved this question the defendant should have asked that this element of damages be withdrawn from the consideration of the jury. A general motion for a verdict does not reach it. The same rule applies as in the case of a declaration in two counts, one of which is proven while the other is not, and it is held that a verdict is never to be directed for a defendant if the declaration contains a good count and there is evidence to support it. *State* v. *Bissell*, 106 Vt. 80, 91, 170 Atl. 102; *Yandow et al.* v. *New Amsterdam Casualty Co.*, 101 Vt. 322, 143 Atl. 299; *Lewis* v. *Crane & Sons*, 78 Vt. 216, 228, 62 Atl. 60.

As to contributory negligence, it is sufficient to say that the plaintiff never knew of the laundry operations until after she came to get her furniture. The motion for a directed verdict was properly overruled.

Exceptions were saved to the admission of evidence that a certain amount of water was seen upon the floor in the laundry

room, and of evidence as to the effect of steam upon veneered furniture. The admissibility of this evidence has been sufficiently covered in our discussion of the motion for a directed verdict. No error is made to appear.

*Judgment affirmed.*