In re STN ENTERPRISES, INC., d/b/a Atwater Arms, Debtor.

Warren WITHERELL, Plaintiff,

v.

STN ENTERPRISES, INC., Defendant.

Bankruptcy No. 84–00098.

Adv. No. 84–0081.

United States Bankruptcy Court, D. Vermont.

Dec. 24, 1984.

Peter H. Banse, of Keyser, Crowley, Banse & Facey, P.C., Rutland, Vt., for Warren Witherell, plaintiff.

John R. Canney, III, and Holly K. Nelson, of Carroll, George & Pratt, Rutland, Vt., for debtor—defendant.

Jerome I. Meyers, Norwich, Vt., for Creditors' Committee.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

The Court has before it for consideration the Complaint of Warren Witherell for Re-

lief from Stay and for Recovery of the Firearms hereinafter described filed on August 30, 1984. Both the Debtor and the Committee of Unsecured Creditors oppose the Complaint.

## FACTS

The Debtor, STN Enterprises, Inc., was organized as a corporation on August 6, 1982 for the purpose of engaging in the purchase and sale of collectible firearms and related collectibles under the trade name of "Atwater Arms." Stephen T. Noyes was its president, sole stockholder and the driving force behind the corporate business. The corporation also conducted an investment program which included the purchase of certain collections of antique firearms. Noyes died on May 5, 1984 as a result of injuries received in an automobile accident, and for several weeks prior thereto, the Debtor was having financial difficulties. These apparently precipitated the filing of a Petition for Relief on June 28, 1984 under Chapter 11 of the Bankruptcy Code. The Schedules show total liabilities of $12,-989,844.35 and assets of $5,284,415.05. Included in the assets are Bennington firearms inventory and Greenwich firearms inventory, listed at an estimated market value without forced sale of $2,500,000.00 and $1,500,000.00, respectively.

Warren Witherell is a retired headmaster of Burke Academy and chairman of its board of trustees, residing in East Burke, Vermont. In March, 1984, he began negotiation with Steve Noyes for the purchase of a Winchester rifle hereinafter described. Witherell had previously had an interest in guns for a long time and his father had become a collector. He first met Noyes on March 30, 1984, after he had been contacted by telephone by Noyes at the suggestion of a mutual friend, one Jim Ross, and after he had expressed to his cousin, also a friend of Noyes, his desire to purchase a firearm. He met Noyes at his residence in Bennington, Vermont. He was taken by Noyes down to his office in the basement where they had a conversation for about an hour and a half, most of which was consumed discussing the possible enrollment of Noyes' son in Burke Academy, Noyes' airplane accident, marathon running and a possible gift by Noyes to the school, as well as a contemplated speech by Noyes to the student body about the history of guns. Not more than ten minutes of this conversation was spent discussing the business of Atwater Arms.

From the display of firearms in the Noyes basement, Witherell picked one out which was of special interest to him and Noyes told Witherell that it was available for sale at a price of $95,000.00. Witherell did not commit himself to purchase the gun at that time, but indicated that he was very much interested and that, after a week's trip to Florida, he would again contact Noyes about the purchase. Witherell inquired about storage and care of the gun since he did not have a secure place in which to keep it, and especially since he was moving from place to place at that time. Noyes informed Witherell that he could make provision for a bailment; that Witherell would receive a bill of sale prior to purchase as well as an appraisal from a Mr. Wilson together with a copy of his book on rifles. Witherell was very firm on a bailment arrangement.

Witherell returned from Florida on Friday, April 6, 1984, and he called Noyes on the 9th of April and told him that he would like to purchase the firearm which is identified by serial number 11218, but that he would need about ten days within which to arrange for payment. As a result of these negotiations, Witherell received the following documentation from Noyes, viz:

a. A notice on Atwater Arms stationery dated 4-10-84 signed by Noyes as "Steve" reading:

"Warren—

"We will send you the following items next week:

"1) R.L. Wilson's newest book titled 'Winchester The Golden Age of Gunmaking and the Winchester 1 of 1000'

"2) The specific appraisal from Mr. R.L. Wilson on Serial # 11218.

"3) A bailment which you must sign and return to Atwater Arms—authorizing us to store your Winchester at our vault in Greenwich, Ct."

b. A receipt from Atwater Arms dated April 10, 1984 addressed to Mr. Warren Witherell indicating receipt of $95,000.00 for the purchase of:

"Finest known Model 1873 1 of 1000 rifle, in terms of condition; a rare early model, Serial no. 11218. Just discovered prox. 1981 in Northern California. Excellent plus condition."

c. A bailment agreement dated April 18, 1984 addressed to Mr. Warren Witherell and executed by Warren W. Witherell as purchaser/owner on Apr. 20, '84 and by Stephen C. Noyes of Atwater Arms. This bailment agreement reads:

"Having purchased the firearm(s) listed below from Atwater Arms and realizing that improper or excessive handling can effect condition and thereby greatly reduce the value of my purchase, I wish to create a bailment, leaving my purchase in the care and custody of Atwater Arms. It is my understanding that Atwater Arms will store this purchase either in its secured showroom in Bennington or in "The Vault" in Greenwich, Connecticut. It is also understood that Atwater Arms has sufficient insurance on both locations and coverage while in transit. I agree to pay, on an annual basis, a reasonable fee for insurance and storage while my purchase is in Atwater Arms' care and custody.

*"Finest known Model 1873 1 of 1000 rifle, in terms of condition; a rare early model, Serial no. 11218. Just discovered prox. 1981 in Northern California. Excellent plus condition."*

d. A letter dated April 10, 1984 signed by Stephen T. Noyes, president of Atwater Arms, addressed to Warren Witherell reading:

"Finest known Model 1873 1 of 1000 rifle, in terms of condition; a rare early model, Serial no. 11218. Just discovered prox. 1981 in Northern California. Excellent plus condition.

"This item has been appraised at fair market value of $95,000.00 by R.L. Wilson, noted author, collector and consultant to antique arms collectors. Books authored by Mr. Wilson include: THE BOOK OF COLT FIREARMS, THE BOOK OF COLT ENGRAVING, THE BOOK OF WINCHESTER ENGRAVING, and THE COLT HERITAGE."

This letter also defined a Specific Purchase Program of Atwater Arms and concluded with this statement, viz:

"Since this item is currently stored in our vault at Greenwich, Connecticut, it will be necessary to discuss specific shipping instructions upon receipt of your check. At that time we will issue you a receipt to support your purchase."

Payment of the rifle was made by Witherell by two separate checks dated 4/24/84 in the sums of $20,000.00 and $75,000.00 payable to the Order of "CSB" which represented the Citizens Savings Bank and Trust Company in which Witherell maintained his checking account, and the proceeds of these two checks were credited to the account of Atwater Arms in the total sum of $95,000.00 via a wire control report from the Federal Reserve Bank of Boston dated 4/24/84.

This is the only transaction which Witherell had with Atwater Arms and the purpose of the purchase was strictly to keep the rifle as a collector, and any decision by Witherell for a possible sale would be made by him, as he put it, sometime "down the road." In the alternative, he could very well decide to keep the rifle for his daughters.

Although the receipt transmitted by Atwater Arms to Witherell did not specifically show a sales tax, Witherell understood that it was included in the purchase price. Although Witherell knew that Noyes did in fact sell guns for his cousin, he never did in fact sell anything for Witherell, nor did Witherell engage Noyes to make any sale

in his behalf. In the event that Witherell did decide to sell the rifle in the future, he would then discuss such a sale with Noyes, but he had no intention of selling the rifle at the time of purchase. After payment, it was left with Noyes for safekeeping under the bailment agreement.

The rifle purchased by Witherell is still in the possession of the Debtor.

## DISCUSSION

The issue in this case is whether Witherell is the owner of the rifle hereinabove described and whether he is entitled to possession.

■ The nature of a creditor's property rights in bankruptcy is defined by state law, not federal law. *Butner v. United States* (1979), 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136; *In Re Skelly Jr.* (U.S. District Court—D. Delaware—1984), 38 B.R. 1000, 1001. State law also defines the nature and extent of debtor's and, therefore, the estate's interest in property. *Butner v. U.S.,* supra; *In Re Abdallah* (Bankr.D.Mass.1984) 39 B.R. 384, 386; *In Re Ford* (Bankr.Md.1980) 3 B.R. 559, aff'd 638 F.2d 14 (4th Cir.1981).

■ Under the Uniform Commercial Code, as adopted in this state, title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties. 9A V.S.A. § 2–401(1). In the instant case, it was the intention of the parties that title to the weapon would pass to Witherell upon payment of the purchase price for it. This was evidenced by the receipt delivered by the Debtor to him with the purchase. Therefore, upon payment of the purchase price, there was compliance with the manner and conditions agreed upon by the parties and title to the weapon passed from the Debtor to Witherell.

■ It is clear that a "true bailment" was contemplated by the parties. A "bailment," in its ordinary legal signification, imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it. 8 Am.Jur.2d 738 § 2. See also *Zweeres v. Thibault,* 112 Vt. 264, 23 A.2d 529.

The agreement executed in April, 1984, clearly comes within the parameters of a "bailment." It specifically states that the parties wish to create a bailment, leaving the purchase in the care and custody of Atwater Arms to be stored in the Greenwich, Connecticut vault, for which the purchaser agreed to pay on an annual basis, a reasonable fee for insurance and storage while the purchase was in the care and custody of Atwater Arms. The special purpose of the bailment was safekeeping, and the firearm was to be kept by the Debtor until reclaimed by the Plaintiff. 8 Am. Jur.2d 738 § 2, *Zweeres v. Thibault,* supra.

Under bankruptcy law, absent state statutory enactment to the contrary, if property was in a debtor's hands as bailee or agent, the trustee (in this case the debtor by virtue of § 1107) holds it as such, and the bailor can recover the property or its proceeds. 4 Collier 15th Ed. 541–40 § 541.- 08. See also *In Re Veon, Inc.,* (Bankr.W. D.Pa.1981) 12 B.R. 186, 188; *Matter of Wright-Dana Hardware Co.,* 211 F. 908 (2d Cir.1914); *In Re Keith,* 1 UCC Rep.Ser 347; *In Re Cox Cotton Company* (U.S. District Court E.D.Ark.1982) 24 B.R. 930, 935; *Devita Fruit Co. v. FCA Leasing Corp.,* 473 F.2d 585 (6th Cir.1973); *Allgeier v. Campisi,* 117 Ga.App. 105, 159 S.E.2d 458 [5 UCC Rep 93] (1968). See also 8 Am.Jur.2d 831 § 98.

Even though the receipt for $95,000.00 and the bailment agreement were delivered by Atwater Arms to Witherell before actual payment was made on April 24, 1984, the transaction was intended by the parties and was in fact a true bailment. Generally speaking, matters of form are of slight significance so far as the validity of a bailment contract is concerned. So long as the lawful possession of the property is in the bailee, under circumstances that impose on

him the duty to return or account for it, there appears to be no disposition on the part of the courts to regard it as any the less a bailment merely because the agreement is informal in character, oral, or implied in fact or in law. 8 Am.Jur.2d 795 § 58.

Both the oral agreement and the documentation executed by the parties clearly establish a "true bailment" under which Witherell is entitled to recover the rifle hereinabove described.

### ORDER

Now, therefore, upon the foregoing,

IT IS ORDERED:

1. The automatic stay prescribed by § 362 of the Bankruptcy Code is TERMINATED.

2. The Debtor shall within ten days from the date of this Order deliver to Warren. W. Witherell the above described rifle, serial number 11218.