In re STN ENTERPRISES, INC., d/b/a Atwater Arms, Debtor.

R. Bill PURCELL, Plaintiff,

v.

STN ENTERPRISES, INC., d/b/a Atwater Arms, Defendant.

Bankruptcy No. 84–00098.
Adv. No. 85–0002.

United States Bankruptcy Court, D. Vermont.

March 15, 1985.

---

John W. Brockway, White River Junction, Vt., for plaintiff R. Bill Purcell.

Steven M. Gates, and Robert Pratt, Rutland, Vt., for debtor, defendant.

Jerome I. Meyers, Norwich, Vt., for Creditors' Committee.

## MEMORANDUM OPINION

CHARLES J. MARRO, Bankruptcy Judge.

This is another of a number of complaints instituted for the recovery of firearms and the adversary proceeding was filed by R. Bill Purcell on January 4, 1985. Both the Debtor and the Committee of Unsecured Creditors oppose the Complaint of Purcell for the recovery of a Single Action Army Colt revolver, Serial No. 8928E.

### FACTS

The Colt Revolver was purchased by R. Bill Purcell on February 1, 1984 as evidenced by an invoice issued by Atwater Arms on that date and indicating the receipt of the sum of $125,000.00 for the purchaser of the revolver with serial number 8928E. In addition, Purcell made payment to Atwater Arms by check issued to its order in the sum of $125,000.00 dated 2–1–1984. In connection with the purchase of the Colt revolver, Stephen T. Noyes, President of STN Enterprises, Inc., d/b/a Atwater Arms, forwarded to Purcell a bailment agreement on a letterhead entitled "Atwater Arms" which reads as follows:

"Having purchased the firearm(s) listed below from Atwater Arms and realizing that improper or excessive handling can effect condition and thereby greatly reduce the value of my purchase, I wish to create a bailment, leaving my purchase in the care and custody of Atwater Arms. It is my understanding that Atwater Arms will store this purchase either in its secured showroom in Bennington or in "The Vault" in Greenwich, Connecticut. It is also understood that Atwater Arms has sufficient insurance on

both locations and coverage while in transit. I agree to pay, on an annual basis a reasonable fee for insurance and storage while my purchase is in Atwater Arms' care and custody."

This bailment agreement was signed by R. Bill Purcell on 2–13–84, but it does not bear the signature of Atwater Arms. Purcell mailed the bailment agreement to Atwater Arms and it was never returned. It was produced at the hearing by Steven Gates, Esquire, co-attorney for the debtor. In addition, at about the same time as the purchase of the Colt revolver, Purcell received a financing statement showing STN Enterprises, Inc., d/b/a Atwater Arms as debtor and Mr. R.B. Purcell as secured party and describing the collateral as a Single Action Army Colt revolver—Serial Number: 8928E. This financing statement was signed in behalf of Atwater Arms and by R. Bill Purcell. It was not filed as required by the Uniform Commercial Code.

After purchase, Purcell did not receive possession of the Colt revolver, but Noyes told him that he had made provision to take care of it for him and described to Purcell the delicate manner in which the firearm should be handled; that Atwater Arms was covered by fire and theft; and that it would take a large amount of money for Purcell to get this type of protection. As a result Purcell left the Gun with Noyes for safekeeping and it was not his present intention to sell it.

Prior to February 1, 1984, Purcell had consummated about 11 transactions with Atwater Arms and did not take possession of any of the guns involved in these transactions. They were all of an investment nature. Purcell did, however, on October 21, 1982, purchase from Atwater Arms a 45 Colt Single Action Army Revolver for the sum of $4,650.00, and it was his intention to keep this weapon. He did in fact receive possession of it from Atwater Arms and he still has it in his home.

Purcell also did on November 7, 1983 participate with John Wilkinson, who became president of the Debtor after the filing of the Chapter 11 proceeding, in an investment of $50,000.00 as a participating share in a multi-unit firearm collection.

## DISCUSSION

From the testimony in this case, the Court concludes that Purcell did in fact purchase the Single Action Army Colt revolver, serial number 8928E for the purpose of keeping it and retaining ownership. He did not take possession, but left it with Atwater Arms for safekeeping under the bailment agreement which he signed on 2–13–84. Even though this agreement was not executed by Atwater Arms, the circumstances surrounding the purchase of the weapon and the uncontradicted testimony of Purcell tend to establish that a bailment was clearly intended. There was no explanation as to the failure of Atwater Arms to sign the agreement after it had been forwarded to Stephen Noyes by Purcell. It was retained in the files of Atwater Arms until it was produced at the hearing by the Attorney for the Debtor.

 Nevertheless, it is clear that a "true bailment" was contemplated. A "bailment," in its ordinary legal signification, imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it. 8 Am.Jur.2d 738 § 2. See also *Zweeres v. Thibault*, 112 Vt. 264, 23 A.2d 529 (1942).

The agreement executed on February 13, 1984 clearly comes within the parameters of a "bailment." It specifically states that the parties wish to create a bailment, leaving the purchase in the care and custody of Atwater Arms to be stored in the Greenwich, Connecticut vault, for which the purchaser agreed to pay on an annual basis, a reasonable fee for insurance and storage while the purchase was in the care and custody of Atwater Arms. The special purpose of the bailment was safekeeping, and the firearm was to be kept by the Debtor

until reclaimed by the Plaintiff. 8 Am. Jur.2d 738 § 2, *Zweeres v. Thibault*, supra.

■ Under bankruptcy law, absent state statutory enactment to the contrary, if property was in a debtor's hands as bailee or agent, the trustee (in this case the debtor by virtue of § 1107) holds it as such, and the bailor can recover the property or its proceeds. 4 Collier 15th Ed. 541–40 § 541.-08. See also *In Re Veon, Inc.*, (Bankr.W.D.Pa.1981) 12 B.R. 186, 188; *Matter of Wright-Dana Hardware Co.*, 211 F. 908, 128 CCA 286 (2d Cir.1914); *In Re Keith* 1 UCC Rep.Ser. 347; *In Re Cox Cotton Company* (U.S. District Court E.D.Ark. 1982) 24 B.R. 930, 935; *Devita Fruit Co. v. FCA Leasing Corp.*, 473 F.2d 585 (6th Cir. 1973); *Allgeier v. Campisi*, 117 Ga.App. 105, 159 S.E.2d 458 [5 UCC Rep. 93] (1968). See also 8 Am.Jur.2d 831 § 98.

Even though the bailment agreement was not signed by Atwater Arms, the transaction was intended by the parties and was in fact a true bailment. Generally speaking, matters of form are of slight significance so far as the validity of a bailment contract is concerned. So long as the lawful possession of the property is in the bailee, under circumstances that impose on him the duty to return or account for it, there appears to be no disposition on the part of the courts to regard it as any the less a bailment merely because the agreement is informal in character, oral, or implied in fact or in law. 8 Am.Jur.2d 795 § 58.

Both the oral agreement and the documentation executed by the parties clearly establish a "true bailment" under which Purcell is entitled to recover the revolver hereinabove described.

■ In reaching this conclusion, the Court observes that the nature of a creditor's property rights in bankruptcy is defined by state law, not federal law. *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979); *In Re Skelly Jr.* (U.S. District Court—D. Delaware—1984), 38 B.R. 1000, 1001. State law also defines the nature and extent of debt-

or's and, therefore, the estate's interest in property. *Butner v. U.S.*, supra; *In Re Abdallah* (Bankr.D.Mass.1984) 39 B.R. 384, 386; *In Re Ford* (Bankr.Md.1980) 3 B.R. 559, aff'd 638 F.2d 14 (4th Cir.1981).

Under the Uniform Commercial Code, as adopted in this state, title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties. 9A V.S.A. § 2–401(1). In the instant case, it was the intention of the parties that title to the weapon would pass to Purcell upon payment of the purchase price for it. This was evidenced by the receipt delivered by the Debtor to him with the purchase. Therefore, upon payment of the purchase price, there was compliance with the manner and conditions agreed upon by the parties and title to the weapon passed from the Debtor to Purcell.

In accordance with the foregoing, Judgment is this day being entered in favor of Purcell.