**J.P. ENTERPRISES, Appellant,**

v.

**URSIN SEAFOODS, INC., Appellee.**

No. S–2711.

Supreme Court of Alaska.

Aug. 4, 1989.

Alan L. Schmitt, Jamin, Ebell, Bolger & Gentry, Kodiak, for appellant.

Melvin M. Stephens, II, Kodiak, for appellee.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

The issue in this case is whether J.P. Enterprises (J.P.) was a bailee of goods owned by Ursin Seafoods, Inc. (Ursin). J.P. contends that its relationship with Ursin was that of lessor and lessee.

J.P. Enterprises operates a storage yard for fishermen and processors in Kodiak, Alaska. Gear owners could haul their gear to J.P.'s yards or J.P. would haul the gear for them. Thereafter, the owners were free to move their gear in and out of the yards as needed.[1] If gear was sold, however, the owner was required to provide J.P. written notice of the sale before the gear was removed.

Ursin stored a large number of crab pots in J.P.'s storage yard. J.P. billed Ursin for storage fees once a year, based on the number and type of pots being stored. All of J.P.'s bills included a disclaimer stating that J.P. was not liable for the loss of property stored on its premises.

After Ursin received its February 1985 storage bill, it claimed a shortage of 21 pots. Ursin filed a complaint against J.P. to recover the value of the missing pots. The superior court concluded that J.P. was a bailee, and that its disclaimer was inef-

---

1. J.P. provided its customers with keys to the main gate, forklift shed and warehouse bays. This fact was not presented at trial but was offered as evidence in support of J.P.'s motion to amend the judgment or for a new trial.

fective as a matter of law.[2] The court entered judgment for Ursin. J.P. appeals.

## II

The essential facts are not in dispute. Therefore, this court is free to determine whether, given those facts, J.P. was a bailee as a matter of law. *Foss Alaska Line v. Northland Servs.*, 724 P.2d 523, 526 (Alaska 1986). We shall "adopt the rule of law that is most persuasive in light of precedent, reason, and policy." *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

The distinction between a bailment and a lease of space has been described as follows:

The test in determining whether a transaction is a bailment or a lease is whether the person leaving the property made such a delivery of the property as to amount to a relinquishment of exclusive possession, control, and dominion over the property so that the person on whose premises it was left can exclude the possession of all others.

8 C.J.S. *Bailments* § 8, at 232 (1988) (footnotes omitted); *see also* 78 Am.Jur.2d *Warehouses* § 26, at 188–89 (1975). "[T]he labels used by a party to characterize its transaction are not determinative; it is the substance of the transaction and the intent of the parties that controls." *Western Enterprises v. Arctic Office Machines*, 667 P.2d 1232, 1234 (Alaska 1983).

The case at bar presents an issue of first impression in Alaska. Other jurisdictions, however, have dealt with similar issues. In *Zweeres v. Thibault*, 112 Vt. 264, 23 A.2d 529 (1942), Zweeres, an owner of furniture, rented a room in a building owned by Thibault. *Id.* 23 A.2d at 531–32. At all times, Zweeres "had control whether she wanted to get her furniture out or leave it there." *Id.* 23 A.2d at 532. Rental fees were charged on a monthly basis, and rent payments had to be current before removing any furniture. *Id.* 23 A.2d at 531–32. The court concluded that a bailment relationship existed. *Id.* 23 A.2d at 533. The fact that Zweeres had control of a specific space did not, in the opinion of the court, establish a landlord/tenant relationship. *Id.* 23 A.2d at 532–33. *See also Luther Transfer & Storage v. Walton*, 156 Tex. 492, 296 S.W.2d 750 (1956) (bailment existed where plaintiff paid monthly rent for a locked compartment in Luther's warehouse and gave key to Luther); *Port of Seattle v. Luketa*, 12 Wash.2d 439, 121 P.2d 951 (1942) (bailment existed where owner of fishing gear rented locker room on an annual basis and kept keys to the room).[3]

In this case, although Ursin had access to J.P.'s storage yard and was free to store and remove gear at will, Ursin was nonetheless required to notify J.P. in writing in order to remove gear after it was sold. Moreover, J.P. assessed an annual fee based on the number and type of pots stored. Furthermore, J.P. restricted entry to the storage yard by fencing the area and providing keys to its customers.

We believe that these facts, establish "such a delivery of the property as to amount to a relinquishment of exclusive possession, control, and dominion over the property." 8 C.J.S. *Bailments* § 8, at 232. Therefore, we hold that a bailment existed between J.P. and Ursin.[4]

2. The court found that "[t]hroughout the period relevant to this lawsuit Defendant J.P. Enterprises was in the business of storing crab pots for a fee which was determined both by the number of pots it had in its possession and the length of time those pots were stored." Therefore, the court concluded, "Defendant J.P. Enterprises was a warehouseman and a bailee for hire with respect to the crab pots here at issue throughout the period of time relevant to this lawsuit."

3. J.P. cites several cases reaching the opposite conclusion. *See, e.g., T.R. Booth & Co. v. Loy*, 100 Ill.App.2d 333, 241 N.E.2d 315 (1968); *Merritt v. Nationwide Warehouse*, 605 S.W.2d 250 (Tenn.App.1980). We do not find these authorities persuasive in the case at bar.

4. J.P. makes several other arguments relative to its status as a warehouseman, the basis for its fees, and the denial of its motion for amendment of the judgment. Because we have determined that J.P. was a bailee rather than a lessor, we need not resolve these issues.

The decision of the superior court is AFFIRMED.