In the Matter of RALPH A. VEON, INC., et al., Debtor.

RALPH A. VEON, INC., Plaintiff,

v.

Warren HINKS, Jr., Michael Cimba, Jr., First Pa. Bank, N. A., Dept. of Environmental Resources of Pa., Creditors' Committee of Ralph A. Veon, Inc., Defendants.

Bankruptcy No. 79–881.
Adv. No. 80–385.

United States Bankruptcy Court,
W. D. Pennsylvania.

April 17, 1981.

Kenneth P. Simon, Pittsburgh, Pa., for plaintiff.

Philip E. Beard, Pittsburgh, Pa., for First Nat. Bank, N. A.

Roger W. Hager, Johnstown, Pa., for Warren Hinks, Jr. and Michael Cimba, Jr.

Richard A. Pollard, Pittsburgh, Pa., for Creditors' Committee of Ralph A. Veon, Inc.

Robert Ging, Dept. of Environmental Resources, Pittsburgh, Pa., for the Dept. of Environmental Resources of Pa.

## MEMORANDUM OPINION

GERALD K. GIBSON, Bankruptcy Judge.

The matter presently before the Court is the complaint of Ralph A. Veon, Inc. (hereinafter called "Veon"), debtor-in-possession pursuant to Chapter 11 of the Bankruptcy Code, seeking a determination as to the ownership of certain bearer bonds totaling $200,000. The bonds are presently in the possession of Kenneth P. Simon, Esq., counsel for Veon. Defendants Warren Hinks, Jr. and Michael Cimba, Jr., officers of Veon, allege that they are entitled to the bearer bonds since they purchased the bonds with their own personal funds and subsequently delivered them to the Department of Environmental Resources of the Commonwealth of Pennsylvania (hereinafter called "DER") on behalf of Veon for the sole purpose of providing security for a state mining permit. Hinks and Cimba further allege that pursuant to the agreement between the parties, the bonds are to be returned to them since the DER denied Veon the mining permit.

Defendants First Pennsylvania Bank, N. A., a secured creditor of Veon, and the Creditors' Committee of Veon, argue that upon delivery of the bonds to Veon, Veon became a purchaser of the bonds for value, in good faith and without notice of any adverse claim pursuant to sections 1–201 and 8–302 of the Uniform Commercial Code. In the alternative, First Pennsylvania Bank argues that under Article 3 of the U.C.C., bearer bonds may not be conditionally transferred and that when Hinks and Cimba transferred the bonds to Veon, all of their rights as holders in due course vested in the corporation, U.C.C. § 3–201(1).

At the pre-trial conference held on July 16, 1980, the parties agreed to waive an evidentiary hearing and to submit the matter on briefs. Having considered the pleadings and the contentions of counsel, the Court concludes, for the reasons set forth below, that Hinks and Cimba are entitled to the bonds.

The facts in this matter are not in dispute. On October 31, 1979, Veon, a Pennsylvania corporation engaged in the mining of coal, filed a petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code. Prior to the filing of its reorganization petition, Veon applied to the DER for a surface mining permit on certain leased real estate that is located in Beaver County and known as the Eichhorn Tract. Pursuant to state law, an applicant for a mining permit must post bond. Veon was unable, however, to obtain a bond from a surety company or to acquire securities in lieu of posting a bond.

Hinks and Cimba believed that the Eichhorn Tract was an important source of saleable coal to Veon and agreed to purchase

with their own personal funds $200,000 face amount of bearer bonds so that the bonds could be used as security for the performance of certain mining obligations. In furtherance of this purpose, Hinks and Cimba each purchased separately $100,000 face amount of bearer bonds and delivered them to the DER on October 18, 1979. Pursuant to the agreements between Hinks and Veon and Cimba and Veon, the bonds were to remain the sole property of Hinks and Cimba, subject only to Veon's use of the bonds as security with the DER.

Veon, in letters dated October 17, 1979 to Hinks and Cimba, expressly acknowledged that ownership of the bonds was to remain in them:

RECEIPT is hereby acknowledged of the following securities ...

RECEIVED BY Ralph A. Veon, Inc., solely for the purpose of depositing with the Division of Licensing and Bonding, Department of Environmental Resources, Commonwealth of Pennsylvania, as security in the obtaining of a bond and permit to strip mine the Eichhorn property located in Lawrence and Beaver Counties, Pennsylvania.

IT IS UNDERSTOOD that these securities continue your sole property and not the property of Ralph A. Veon, Inc., subject only to their use for the above-specified purpose, and that they will be returned to you immediately upon release by the Commonwealth of Pennsylvania and shall not be used for any other purpose by Ralph A. Veon, Inc.

IT IS AGREED that notice of your right to these securities shall be given the filing of Financing Statements under the Uniform Commercial Code wherein you are the Secured Party and the undersigned is the Debtor.

Moreover, the Consent to Corporate Action, dated October 17, 1979, of Veon contained the following language indicating that Hinks and Cimba did not intend to pass title to the bonds to Veon:

WHEREAS, Ralph A. Veon, Inc. does not have sufficient financial resources to obtain a bond satisfactory to the DER in obtaining a permit to strip mine the Eichhorn property in Lawrence and Beaver Counties, Pennsylvania, and Michael Cimba, Jr. and Warren H. Hinks, Jr. are willing to guarantee the compliance by Ralph A. Veon, Inc. with the terms of its strip mining permit of said tract by lending certain securities securing the compliance by Ralph A. Veon, Inc. with the terms of its permit with the DER, subject to the understanding that said bonds shall continue the property of Messrs. Cimba and Hinks ...

NOW, THEREFORE, BE IT RESOLVED, that the corporation borrow from Michael Cimba, Jr. the following securities ... for the sole purpose of depositing said bonds with the Division of Licensing and Bonding, Department of Environmental Resources, Commonwealth of Pennsylvania, as security in obtaining a bond and permit to strip mine the Eichhorn property in Lawrence and Beaver Counties, Pennsylvania, and that said bonds be returned to Michael Cimba, Jr. and Warren H. Hinks, Jr., respectively, upon release by the Commonwealth of Pennsylvania, and that notice of this transaction be made a matter of public record by filing Financing Statements in which Ralph A. Veon, Inc. is shown as the Debtor and Michael Cimba, Jr. and Warren H. Hinks, Jr., respectively, as the Secured Party.

The bonds were delivered directly to the DER by Hinks and Cimba and were never co-mingled with any property of Veon. No creditor ever relied on these bonds in extending credit to Veon.

The DER did not grant Veon the mining permit. Subsequently, the DER released the bonds to Kenneth P. Simon, Esq., until such time that this Court determines whether Hinks and Cimba or the estate of Veon are entitled to them.

### Discussion

It is well settled under bankruptcy law that a bailor may recover property held by a debtor as bailee. *Matter of Wright-Dana Hardware Co.*, 211 F. 908 (2d Cir.

1914). In a bailment relationship, title to the property remains in the bailor and since the trustee takes only the property rights which the debtor-bailee possessed, title to the property does not become a part of the debtor's estate. 4A Collier on Bankruptcy ¶ 70.18 at 199–208 (14th edition). Section 725 of the Bankruptcy Code, 11 U.S.C. § 725, expressly provides that the trustee, as part of his administrative duties, may dispose of the property "after notice and hearing" that the debtor holds, *inter alia*, as a bailee.

■ In the present case, the relationships between the debtor Veon and Hinks and between Veon and Cimba were bailments. A bailment is a "delivery of personalty for some particular purpose, or upon mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it. . . ." *Wright v. Sterling Land Co.*, 157 Pa.Super. 625, 626, 43 A.2d 614, 615 (1945). The parties herein clearly intended that title to the bonds remain in Cimba and Hinks. The contractual terms between them expressly provided that the bearer bonds were delivered to the DER on behalf of Veon "solely for the purpose of depositing [them] with the . . . [DER], as security in the obtaining of a bond and permit to strip mine the Eichhorn property located in Lawrence and Beaver Counties, Pennsylvania." The terms further provided that the securities continue to be the property of Hinks and Cimba, subject only to their use as security with the DER, and that "they will be returned to . . . [Hinks and Cimba] immediately upon release by the Commonwealth of Pennsylvania and shall not be used for any other purpose by Ralph A. Veon, Inc."

The defendants argue, however, that notwithstanding the express intentions of the parties, the debtor as bailee in this case takes all of the property rights in the bearer bonds pursuant to Article 3 of the U.C.C., 12A P.S. § 3–301 et seq. (1970), or alternatively, Article 8 of the U.C.C., 12A P.S. § 8–101 et seq. (1970). Initially, Article 8 of the U.C.C. governs the case at bar since the bearer bonds in question are "securities" as defined in section 8–102. An investment security is defined as an instrument which:

  (i) is issued in bearer or registered form; and

  (ii) is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and

  (iii) is either one of a class or series or by its terms is divisible into a class or series of instruments; and

  (iv) evidences a share, participation or other interest in property or in an enterprise or evidences an obligation of the issuer.

U.C.C. § 8–102. Although the bearer bonds are also "negotiable instruments," U.C.C. § 8–102(b) provides that they are governed by Article 8 and not by Article 3. *See generally*, Comment, The Status of an Investment Security Holder Under Article 8, 33 Fordham Law Review 466 (1965). Since Article 8 is much less detailed than Article 3, it is, however, appropriate to look to Article 3 for guidance where the language of Article 8 does not resolve a particular question. *E. F. Hutton & Co. v. Manufacturers Nat. Bank of Detroit*, 259 F.Supp. 513 (E.D.Mich.1966).

Central to the defendants' claim that the debtor is entitled to the bearer bonds is that either (1) the debtor enjoys the status of a bona fide purchaser pursuant to the "shelter provision" outlined in U.C.C. § 8–301(1); or (2) the debtor is in fact a bona fide purchaser under U.C.C. § 8–302. The defendants contend that the debtor acquired the rights of a bona fide purchaser under the "shelter provision" since its transferors, Hinks and Cimba, were both bona fide purchasers, U.C.C. § 8–301(1). Section 8–301(1) provides:

  Upon delivery of a security the purchaser acquires the rights in the security which his transferor had or had actual authority to convey except that a purchaser who has himself been a party to

any fraud or illegality affecting the security or who as a prior holder had notice of an adverse claim cannot improve his position by taking from a later bona fide purchaser. "Adverse claim" includes a claim that a transfer was or would be wrongful or that a particular adverse person is the owner of or has an interest in the security.

The Court concludes, however, that U.C.C. § 8–301(3) applies here to preclude the debtor from acquiring the rights of a bona fide purchaser by virtue of U.C.C. § 8–301(1).

Section 8–301(3) states that "the purchaser of a limited interest acquires rights only to the extent of the interest purchased." Additionally, section 8–313(1)(a) provides that delivery occurs when a person acquires possession of the security. Pursuant to U.C.C. § 3–202, the bearer bonds in question were negotiated by delivery when Hinks and Cimba turned the bonds over to the DER on behalf of Veon. The debtor therefore became a "purchaser" under U.C.C. § 1–201(32), which defines "purchaser" to include one who takes by negotiation. The parties herein clearly intended that the debtor acquire only a possessory interest in the bonds for a limited purpose and time. Section 8–301(3) protects the express intentions of the immediate parties to a bailment transaction and accordingly, the shelter provision of section 8–301(1) is inapplicable to the facts of this case.

In substance, defendant First Pennsylvania Bank contends that bearer bonds which do not contain a restrictive endorsement, U.C.C. § 8–304(1), or notice of an an adverse claim on their face, U.C.C. § 8–310, may never be the subject of a bailment. The Court is not persuaded by this contention. Although "a person to whom a security is delivered acquires all of the rights which his transferor had or had actual authority to convey, of course, the purchaser does not acquire such interest if the parties did not purport to transfer such interest to him." 3 Anderson, Uniform Commercial Code § 8–301:4, at 720. Thus, the "purchaser" as a bailee acquires an interest in the bonds only to the extent of the agreement between the parties. Similarly, in order to effectuate a valid transfer of ownership in securities, as between immediate parties to a sales transaction, there must be delivery with intent to change ownership. *Rare Earth, Inc. v. Hoorelbeke,* 401 F.Supp. 26 (S.D.N.Y.1975); *Kaufman v. Diversified Industries, Inc.,* 460 F.2d 1331, 1334 (2d Cir.), *cert. denied,* 409 U.S. 1038, 93 S.Ct. 517, 34 L.Ed.2d 487 (1972); *Rogers v. Rogers,* 271 Md. 603, 319 A.2d 119, 122–23 (1974). This reading of the Code is commercially sound and does not in any way impair the free market of securities or the Code's protection of bona fide purchasers.

It is also clear that the debtor is not a "bona fide purchaser" pursuant to U.C.C. § 8–302. A bona fide purchaser is defined as "a purchaser for value in good faith and without notice of any adverse claim who takes delivery of a security in bearer form or one in registered form issued to him or endorsed to him or in blank." U.C.C. § 8–302. In the case at bar, the debtor clearly had notice of Hinks and Cimba's ownership interest. The express language of the debtor's contracts with Hinks and Cimba provided that title to the bonds would remain in Hinks and Cimba and that the debtor would acquire only a temporary possessory interest for the purpose of obtaining the mining permit. The debtor therefore took the bonds subject to the ownership interests of Hinks and Cimba. An analogous provision of the U.C.C. is section 3–306, which provides that "unless he has the rights of a holder in due course, any person takes the instrument subject to (a) all valid claims to it on the part of any person; and (b) all defenses of an party which would be available in an action on a simple contract; and (c) the defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or delivery for a special purpose. . . ." The debtor, who is not a bona fide purchaser, took the bonds subject to the rights of Hinks and Cimba under the bailment contract, wherein the parties agreed that the bearer bonds would be re-

turned to Hinks and Cimba if the DER denied Veon the mining permit.

The DER has denied Veon the mining permit and it is, therefore, ordered that Kenneth P. Simon, Esq., counsel for Veon, return the bonds to Hinks and Cimba. An appropriate order will be entered.