Ellen WATERHOUSE, Appellant

v.

DISTRICT OF COLUMBIA and Anthony A. Williams, Mayor of the District of Columbia, Appellees.

No. 01–7018.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 11, 2001.

Decided Aug. 13, 2002.

Theodore M. Cooperstein argued the cause and filed the briefs for appellant.

Mary E. Pivec argued the cause for appellees. With her on the brief was Rob-

ert R. Rigsby, Corporation Counsel. Jessica A. Valltos entered an appearance.

Before: SENTELLE, RANDOLPH, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

Alleging that she was unlawfully terminated because of her race, Ellen Waterhouse brought suit against her former employer, the District of Columbia, and her former supervisor, Mayor Anthony Williams. The district court granted the defendants' motion for summary judgment, holding that Waterhouse failed to offer evidence upon which a reasonable jury could find that her termination was the result of discrimination. We affirm.

I

In March 1997, Ellen Waterhouse, a white female, began work as the Chief Financial Officer (CFO) for the District of Columbia's Department of Administrative Services (DAS). She was hired by Anthony Williams, who at the time was the Chief Financial Officer for the District. She worked for him and was directly supervised by several members of his senior staff, including Norman Dong, Williams' Chief of Staff, Laura Triggs, the Associate Chief Financial Officer, and Earl Cabbell, one of Williams' Deputy CFOs. Dong, Triggs, and Cabbell all participated in Waterhouse's hiring.

DAS provides procurement and accounting services to the agencies that make up the District of Columbia government. As its CFO, Waterhouse was responsible for making payments to vendors who provide telecommunications, security, custodial, and other services to those agencies, and for managing the process through which the agencies reimburse DAS for making those payments. It was also her duty to oversee the preparation of year-end closing packages, which resolve any discrepancies between the amount of money each agency transferred to DAS during the preceding year and the amount DAS actually paid for the services used by that agency. In addition, she was charged with preparing the DAS annual budget and with hiring, managing, and improving the DAS financial team. As part of her job, Waterhouse was expected to make regular reports to Dong and Triggs concerning the status of these projects.

In late 1997, citing her failure to fulfill her job responsibilities, Dong and Triggs recommended that Waterhouse be fired. In January 1998, Williams terminated her employment. Shortly thereafter, Waterhouse filed a charge of discrimination with the Equal Employment Opportunity Commission. She received a right-to-sue letter, and subsequently brought suit against the District and Mayor Williams (in his official capacity) in the United States District Court for the District of Columbia. In her complaint, Waterhouse alleged that the defendants had terminated her on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.[1]

After conducting discovery, the defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56, contending that Waterhouse was fired because of her failure to fulfill her job

---

1. Waterhouse also charged violations of 42 U.S.C. § 1981(b), which prohibits racial discrimination in "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual rela- tionship." She does not mention § 1981(b) on appeal, and, in any event, we analyze claims under both statutes using the same framework. See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1114 n. 3 (D.C.Cir.2000).

responsibilities, and that there was no evidence upon which a reasonable jury could find that race, rather than her poor performance, was the cause of her termination. As required by Local Civil Rule 7.1(h), the defendants filed a "Statement of Facts" that they contended were undisputed. That statement documented evidence related to Waterhouse's performance problems. In response, Waterhouse filed a "Verified Statement of Material Facts" that she contended were in dispute.[2]

The district court reviewed these submissions and found that Waterhouse's statement, and the record material it referenced, failed to rebut "many of the facts set forth by defendants concerning plaintiff's alleged failure to perform her work satisfactorily." *Waterhouse v. District of Columbia*, 124 F.Supp.2d 1, 4–5 (D.D.C. 2000). In accordance with Rule 7.1(h),[3] the court treated as admitted all facts not controverted by the plaintiff, and based on those facts concluded that Waterhouse could not establish that the reasons proffered by the defendants were false. *Id.* at 5, 7–11. The court then considered additional evidence that Waterhouse contended demonstrated discrimination, including statements allegedly made by Williams

and Dong. It found that this evidence did not create a genuine dispute as to the defendants' motivation for firing her. *Id.* at 11–13. Consequently, the court concluded that a reasonable jury could not find that Waterhouse's termination was motivated by a discriminatory animus, and therefore granted summary judgment for the defendants. *Id.* at 13.[4]

II

We review the district court's decision to grant summary judgment de novo. *Breen v. Department of Transp.*, 282 F.3d 839, 841 (D.C.Cir.2002); *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C.Cir. 1998). In doing so, we must view the evidence in the light most favorable to Waterhouse and draw all reasonable inferences in her favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 152, 120 S.Ct. 2097, 2111, 147 L.Ed.2d 105 (2000); *Aka*, 156 F.3d at 1288.

A district court may grant summary judgment only if " 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.' " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct.

**2.** Rule 7.1(h) requires a party moving for summary judgment to provide a statement identifying the undisputed facts that entitle it to judgment as a matter of law, and directs the nonmoving party to respond with a statement listing the facts "as to which it is contended there exists a genuine issue necessary to be litigated." D.D.C. Local Civ. Rule 7.1(h). The identical rule appears as Local Civil Rule 56.1.

**3.** The rule states that "the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." D.D.C. Local Civ. Rule 7.1(h).

**4.** Waterhouse's complaint also claimed that the defendants subjected her to a racially hos-

tile work environment, and that they discriminated against her prior to her termination by giving her "less time, resources and support" than similarly situated African–American employees. Compl. ¶¶ 16, 22. The district court granted summary judgment against Waterhouse on the hostile work environment claim because she did not oppose the defendants' motion with respect to that claim. 124 F.Supp.2d at 3. It granted judgment on the second claim because she "set forth no evidence whatsoever that she received fewer resources than other non-white agency-based CFOs," and "failed to identify any similarly situated African–American CFO who was treated more favorably than she was." *Id.* at 15. Waterhouse does not challenge the dismissal of those claims on appeal. *See* Appellant's Br. at 1.

2505, 2510, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(c)). A dispute about a material fact "is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510. A moving party is "entitled to judgment as a matter of law" against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Consistent with Local Civil Rule 7.1(h), in determining whether to grant summary judgment the district court looked only at the parties' statements and the record material they referenced. *See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner,* 101 F.3d 145, 154 (D.C.Cir. 1996) (holding that the district court may rely on statements submitted in accordance with the local rule and "is under no obligation to sift through the record ... in order to evaluate the merits of [a] party's case"). We limit our review to those materials as well, and, like the district court, we treat as admitted all facts not controverted in Waterhouse's Verified Statement. *See SEC v. Banner Fund Int'l,* 211 F.3d 602, 615 (D.C.Cir.2000); *Jackson,* 101 F.3d at 154; D.D.C. Local Civ. Rule 7.1(h).[5]

Title VII makes it "an unlawful employment practice for an employer to ... discharge any individual ... because of such individual's race [or] color." 42 U.S.C. § 2000e–2(a). The Supreme Court's opinion in *McDonnell Douglas* provides the familiar framework for analyzing Title VII claims that are based principally on circumstantial evidence. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *see Reeves,* 530 U.S. at 142, 120 S.Ct. at 2106–06. Although "intermediate evidentiary burdens shift back and forth in this framework, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Id.* at 143, 120 S.Ct. at 2106 (quoting *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)).

Under the *McDonnell Douglas* framework, "the plaintiff must [first] establish a prima facie case of discrimination." *Reeves,* 530 U.S. at 142, 120 S.Ct. at 2106 (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993)). If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to " 'produc[e] evidence that the plaintiff was rejected ... for a legitimate, nondiscriminatory reason.' " *Id.* (quoting *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094). If the defendant satisfies that burden, "the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [i]s discrimination *vel non.*" *Id.* at 142–43, 120 S.Ct. at 2106 (internal quotation marks and citations omitted).

At that point, to survive summary judgment the plaintiff must show that a reasonable jury could conclude that she was terminated for a discriminatory reason. *See Aka,* 156 F.3d at 1290. The question is:

---

**5.** The district court noted that the format of Waterhouse's Verified Statement was deficient in a number of respects. 124 F.Supp.2d at 4. Waterhouse's appellate counsel disputed this and contended that the statement "did not actually violate" Rule 7.1(h), Appellant's Reply Br. at 9, although he conceded at oral argument that the statement was not in "the ideal or exemplary format." While we regard the district court's criticism of the statement as quite well founded, the point is moot since the court disregarded the statement's deficiencies and decided the summary judgment motion as if the statement were valid.

whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer). . . .

*Id.* at 1289; *see Reeves,* 530 U.S. at 151, 120 S.Ct. at 2110–11. With respect to the second category of evidence, "the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence.' " *Reeves,* 530 U.S at 143, 120 S.Ct. at 2106 (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095). As the Supreme Court has explained, "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination," because "in appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Id.* at 147, 120 S.Ct. at 2101–02.

## III

To establish her prima facie case, Waterhouse contended that she performed her job at an acceptable level, that she was discharged, and that a person of another race was hired in her stead. *See Waterhouse,* 124 F.Supp.2d at 5, 6–7. Although the defendants disputed that she per-

formed at an acceptable level, the district court noted that inadequate performance was also the defendants' explanation for terminating Waterhouse. The court therefore announced that it would "assume that a prima facie case is established and proceed to analyze whether plaintiff has demonstrated that defendants' proffered reason is a pretext for discrimination." 124 F.Supp.2d at 7 (internal quotation marks and alteration omitted).

The defendants do not challenge that approach on appeal.[6] Nor does Waterhouse dispute the district court's finding that the defendants satisfied their burden of production by proffering a legitimate reason for firing her, namely her poor job performance. We therefore proceed directly to the final question: did Waterhouse meet her "burden of showing that a reasonable jury could conclude that [she] had suffered discrimination"? *Aka,* 156 F.3d at 1290. As noted above, we consider three possible sources of evidence that, in combination, Waterhouse might have relied upon to meet that burden: (1) evidence she used to establish her prima facie case; (2) evidence that the defendants' proffered explanation for her termination was false; and (3) any additional evidence of discriminatory motive. *Id.* at 1289; *see Reeves,* 530 U.S. at 151, 120 S.Ct. at 2110–11.

The prima facie case that Waterhouse presented to get to the second step of the *McDonnell Douglas* analysis is particularly weak support for a claim of intentional discrimination, as it was based on little more than an allegation that the defen-

---

**6.** *See Fischbach v. District of Columbia Dep't of Corr.,* 86 F.3d 1180, 1182 (D.C.Cir.1996) ("proceed[ing] directly to the second step under *McDonnell Douglas*" where the defendant conceded that the plaintiff had "made out a prima facie case of discrimination"); *see also Mungin v. Katten Muchin & Zavis,* 116 F.3d 1549, 1554 (D.C.Cir.1997) (noting that

"[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant" (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983))).

dants rebutted in the next step: that she had adequately performed her responsibilities as CFO. Accordingly, Waterhouse does not dispute that her prima facie case adds little to the pile of evidence that she must accumulate to survive summary judgment.

■ Nor did Waterhouse offer "sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation for its decision." *Reeves*, 530 U.S. at 140, 120 S.Ct. at 2104. According to the defendants, Waterhouse was fired due to poor job performance. The district court's thorough opinion demonstrates that there was no genuine issue regarding Waterhouse's failure to fulfill her basic job responsibilities, largely because she failed to "dispute many, if not most, of the facts on which defendants rely to support their termination decision." 124 F.Supp.2d at 7. We highlight only a few examples.

One of the primary reasons the defendants cited for Waterhouse's termination was her delay in submitting DAS' Fiscal Year (FY) 1997 closing packages. They asserted that, as part of the year-end closing process, Waterhouse was required to provide audit and financial information on or before November 30, 1997, and that she failed to meet that deadline as well as several interim deadlines. Defs.' Stmt. ¶¶ 22–24, 32. At her deposition, Waterhouse admitted that she missed the deadlines, Waterhouse Dep. Vol. II at 38–39, and she did not dispute that her delay had an adverse impact on other agencies, 124 F.Supp.2d at 8 n. 10 (citing Defs.' Stmt. ¶ 22). She also did not dispute that Chief of Staff Dong, Associate CFO Triggs, and

Deputy CFO Cabbell met with her on several occasions to express dissatisfaction with her progress in submitting the closing information. *Id.* (citing Defs.' Stmt. ¶¶ 24, 32).[7] Her only defense was that she was not solely responsible for the delay, and that she should have received greater support from outside contractors. Pl.'s Verif. Stmt. at 16–17.

The defendants also cited Waterhouse's failure to meet deadlines related to the budget formulation process. Specifically, their Statement of Facts charged that in late 1997, the Deputy CFO of the Office of Budget and Planning reported to Williams that Waterhouse was late in providing his office with several reports necessary to prepare the FY 1999 budget for DAS. He also told Williams that she did not have the financial expertise necessary to manage the budget process. Defs.' Stmt. ¶ 27; Williams Aff. ¶ 18. As the district court noted, Waterhouse did not contest these facts. 124 F.Supp.2d at 11 n. 15. Instead, she described an improved system she said she implemented for providing budgetary information to the agencies served by DAS. Pl.'s Verif. Stmt. at 13.

The defendants further charged that Waterhouse failed to pay vendors on time. Defs.' Stmt. ¶¶ 14–15. Waterhouse did not take issue with this charge. To the contrary, she acknowledged during her deposition that she was late in making payments and that vendors complained to her superiors. Waterhouse Dep. Vol. I at 198–202. In response to this charge, her Verified Statement merely asserted—without offering any evidentiary support—that

---

7. Dong, Triggs, and Cabbell determined that it was necessary to assign employees from other departments to assist Waterhouse. Defs.' Stmt. ¶¶ 22–24. Waterhouse did not dispute that one of those employees, Laura Braxton, reported that she found serious deficiencies in Waterhouse's management of the process, and that Waterhouse's failure to submit timely and accurate FY 1997 closing packages had forced other district agencies to reopen their books and record budget deficiencies. 124 F.Supp.2d at 8 n. 10 (citing Defs.' Stmt. ¶¶ 25, 31). Nor did she dispute that an outside contractor echoed Braxton's complaints. *Id.*

"most invoices" were not paid very late, and that she "made substantial progress toward improving her agency's timely payments to vendors." Pl.'s Verif. Stmt. at 7. Waterhouse also contended that in some cases she did not make payments because she believed they were not authorized. However, she admitted that she failed to make those payments even after she explained her rationale to her superiors and they directed her to make payment. *Id.*; Waterhouse Dep. Vol. I at 149–54.

Finally, the defendants complained, and Waterhouse conceded, that she failed to submit monthly status reports required by Dong and Triggs. Defs.' Stmt. ¶¶ 17, 34; *see* Waterhouse Dep. Vol. II at 30–31 (admitting that she failed on several occasions to submit the reports). Waterhouse contended that this failure was not important because she kept her supervisors updated by other means. Pl.'s Verif. Stmt. at 12.

Because Waterhouse did not contravene—and in fact admitted—many of the deficiencies the defendants cited concerning her performance, she failed to establish that her " 'employer's proffered explanation [was] unworthy of credence.' " *Reeves,* 530 U.S. at 143, 120 S.Ct. at 2106 (quoting *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095). At best, her responses constituted an argument that, notwithstanding those failings, the District should not have terminated her because there were extenuating circumstances and there were some positive attributes to her performance. But courts are without authority to " 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.' " *Fischbach v. District of Columbia Dep't of Corr.,* 86

F.3d 1180, 1182 (D.C.Cir.1996) (quoting *Milton v. Weinberger,* 696 F.2d 94, 100 (D.C.Cir.1982)). And Waterhouse's responses offered no grounds for a rational juror to conclude that the reason she was fired was racial discrimination rather than poor performance. *See Forman v. Small,* 271 F.3d 285, 291 (D.C.Cir.2001) ("Consistent with the courts' reluctance to become involved in micromanagement of everyday employment decisions, the question before the court is limited to whether [plaintiff] produced sufficient evidence of ... discrimination, not whether he was treated fairly...." (citations omitted)); *Fischbach,* 86 F.3d at 1183 (noting that to rebut the employer's nondiscriminatory explanation " '[i]t is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible' " (quoting *Pignato v. American Trans Air, Inc.,* 14 F.3d 342, 349 (7th Cir.1994))).[8]

■ In a further attempt to undermine the defendants' explanation for her termination, Waterhouse identified six "black managers" who she alleged were not terminated despite performance problems. Pl.'s Verif. Stmt. at 19–20. She did not allege, however, that even one had problems of the same magnitude cited by defendants in explaining their decision to fire her. Indeed, as the district court found, Waterhouse's Verified Statement "provide[d] no evidence that these individuals ... had individual performance problems [or] had performance problems similar to hers." 124 F.Supp.2d at 14. In the absence of evidence that the comparators were actually similarly situated to her, this

---

**8.** Had Waterhouse been able to demonstrate, as she claimed in her complaint, that the reason she failed was that she was intentionally given "less time, resources and support" than similarly situated African–American employees, Compl. ¶¶ 16, 22, her responses would have been considerably more proba-

tive. As noted above, however, the district court granted summary judgment on that claim because Waterhouse proffered "no evidence whatsoever" to support it, 124 F.Supp.2d at 15, and she has not challenged that decision on appeal. *See supra* note 4.

allegation added nothing to Waterhouse's claim that the defendants' explanation for her termination was mere pretext. *See McGill v. Munoz*, 203 F.3d 843, 848 (D.C.Cir.2000) (holding that the plaintiff provided no evidence of pretext where she "offered no evidence that employees with similarly suspicious patterns of absenteeism were treated any differently than she was"); *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C.Cir.1995) (finding that the terminated employee failed to show that the retained employee had similar difficulty in getting along with others in the firm).

Having concluded that neither her prima facie case nor her evidence of pretext—either separately or in combination—was sufficient to permit her case to go to a jury, we turn finally to the additional evidence of discriminatory intent proffered by Waterhouse. For this, she relied primarily on two statements by her superiors, one by Anthony Williams and one by Norman Dong.

■ With respect to Mayor Williams, Waterhouse cited a *Washington Post* article that quoted him as saying: "One of the legacies I want to leave is that one of the finest run cities in the country was run by an African–American team and that is an important message." Pl.'s Verif. Stmt. at 20, Exh. P. As the district court pointed out, however, this statement was made in the context of a general discussion of Williams' commitment to challenging stereotypes with respect to his mayoral staff.

It was not made when he was District CFO; rather, it was made more than a year after he became Mayor and more than two years after Waterhouse was terminated. 124 F.Supp.2d at 11–12.[9]

■ Waterhouse also pointed to a statement that Dong allegedly made during a discussion of office hiring with Antonio Acevedo, who was Human Resources Director for the Office of the Chief Financial Officer. According to Acevedo, Dong said that the District "had too many white managers already." Pl.'s Verif. Stmt. at 18 (citing Acevedo Dep.). The statement was made midway through Waterhouse's tenure, and its probative value was seriously undercut by the undisputed fact that Dong approved the decision to hire Waterhouse earlier that same year. Dong Aff. ¶ 5. *See Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir.1997) (affirming summary judgment and noting that "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire," especially "when the firing has occurred only a short time after the hiring"); *Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir.1995) ("An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class.").[10] Moreover, Dong was not the only one to complain of Waterhouse's deficiencies or to recommend her termination.

---

**9.** Waterhouse further contends that Williams was quoted as decrying that "it was too white at the top in the beginning." Appellant's Br. at 25. Her citation, however, is to the same *Washington Post* article, which attributes the quote not to Williams but to an anonymous "former staffer who is white," and suggests that it refers to the beginning of Williams' mayoral administration rather than of his service as District CFO. Pl.'s Verif. Stmt., Exh. P.

**10.** *See also Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1442 (11th Cir.1998); *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270–71 (9th Cir.1996); *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir.1996); *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir.1996); *EEOC v. Our Lady of the Resurrection Med. Ctr.*, 77 F.3d 145, 152 (7th Cir.1996).

In short, in light of the circumstances in which they were made, the statements of Williams and Dong did not add enough to Waterhouse's proffered evidence to satisfy her "burden of showing that a reasonable jury could conclude" that she was terminated on account of her race. *Aka*, 156 F.3d at 1290.

### IV

For the foregoing reasons, we find that the defendants were entitled to judgment as a matter of law. The district court's grant of summary judgment in their favor is therefore

*Affirmed.*