**LITTLE PLANTATION ESTATES, Plaintiff**

**v.**

**RICHARD LOOS, ROBERT A. MELILLO and NASSAU ESTATES
DEVELOPMENT ASSOCIATES, Defendants**

LITTLE PLANTATION ESTATES v. LOOS

Civil No. 926/1992

Territorial Court of the Virgin Islands

Division of St. Thomas and St. John

December 10, 2004

SHARON SCHOENLEBEN, ESQUIRE, St. John, U.S.V.I., *Attorney for Plaintiff*.

RICHARD LOOS, Defendant, *Pro se*.

SWAN, *Judge*

## MEMORANDUM OPINION

(December 10, 2004)

Before the Court is Plaintiff Little Plantation Estates' Motion for Summary Judgment against Defendant Richard Loos ("Loos"). Plaintiff asserts that it is entitled to recover from Defendant Loos four (4) original Peter Max paintings, which were part of the sale price in an August 26, 1990 sale of real property. The sale of property was between Plaintiff as the seller and Defendants as the purchasers. Plaintiff further asserts that it acquired legal title to the artwork at the time of closing for the sale of parcel nos. 71-25 and 83 Estate Fish Bay on the island of St. John, U.S. Virgin Islands. Lastly, Plaintiff asserts that at the time of closing on the property, Defendant Loos simultaneously became a bailee[1] pursuant to a

---

[1] The "bailor" is one to whom the property is bailed. BLACK'S LAW DICTIONARY, 6th Ed., West Publishing Co. 1990. The "bailor" is one who bails property to another.

separate agreement, which created a bailment between him and Plaintiff. Absent a statute to the contrary, if property is in a debtor's possession as a bailee, the debtor's trustee in bankruptcy holds the property as a bailee, and the bailor can recover either the property or the proceeds from its sale. Therefore, even though Loos filed for bankruptcy, Plaintiff is entitled to recover the artwork. If the artwork has been sold, Plaintiff is entitled to the proceeds from the sale. Accordingly, for the reasons elucidated below, Plaintiff's Motion for Summary Judgment will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 26, 1990, Defendants Loos, Robert Melillo ("Melillo") and Nassau Estates Development Associates ("Associates") purchased real property from Little Plantation Estates ("Estates"), known as Parcel Nos. 71-25 and 83 Estate Fish Bay, St. John, U.S. Virgin Islands, pursuant to a written agreement.[2] The sale price was Three Hundred Fifty Thousand and 00/100 Dollars ($350,000.00), which was to be paid with a Two Hundred Thousand and 00/100 Dollars ($200,000.00) cash payment, and with delivery of four (4) original Peter Max paintings[3] valued at One Hundred Fifty Thousand and 00/100 Dollars ($150,000.00). At the closing of the sale, Defendants paid the agreed cash sum of Two Hundred Thousand and 00/100 Dollars ($200,000.00), and delivered the artwork to Plaintiff. Subsequently, Defendant Loos entered into a separate verbal agreement with Frank Gordon, a General Partner of Estates, whereby Loos would retain possession of the artwork while endeavoring to sell the artwork on behalf of Estates. However, Loos has neither redelivered the paintings to Estates, nor has paid Estates One Hundred Fifty Thousand and 00/100 Dollars ($150,000.00). Likewise, Loos has not paid Estates any proceeds generated by a sale of the four (4) artworks. Consequently, in 1992 Estates initiated this lawsuit.

---

[2] Subsequent to this agreement, Defendants Richard Loos and Robert Melillo assigned all of their rights, title and interest to a joint venture, known as Defendant Nassau Estates Development Associates, which was formed in the State of New York.

[3] The four original Peter Max artworks at issue are: "Mondrian Ladies"—48" x 36", Acr/Can 1990; "Deco Lady"—36" x 48", Acr/Can, 1998; "Statute of Liberty '89"—60" x 60", Acr/Can, 1990 (Head); and "Statute of Liberty"—36" x 72", Acr/Can, 1990. On March 14, 1990, the fair market value of the four paintings were appraised at $55,000.00, $50,000.00, $75,000.00 and $85,000.00 respectively, for insurance purposes in the State of New York, by Sigmund Rothschild, A.S.A., F.S.V.A.

On July 13, 1994, Loos filed for bankruptcy under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court, Eastern District of New York, (Bankruptcy Case No. 94-84018-478), and was discharged in bankruptcy on May 5, 1995. Thereafter, on September 27, 1995, Estates filed a Motion to Lift Stay in the Territorial Court, asserting that notwithstanding the fact that Loos was discharged as a debtor in the bankruptcy court, he continued in possession of the artwork that was legally owned by Estates, and which should not have been subject to Loos's bankruptcy proceedings. Consequently, Estates requested that Loos remains a party to this case.

Former Territorial Court Judge Soraya Diase denied the Motion to Lift Stay, stating that the Court did not have sufficient information and legal research before it to consider Plaintiff's motion. On August 23, 1996, Defendant Melillo filed a Motion to Dismiss on behalf of himself and the joint venture, Associates, asserting that Defendants fully performed their obligations under the contract of sale. Melillo averred that at the August 14, 1990 closing, Defendants paid Two Hundred Thousand and 00/100 Dollars ($200,000.00) in cash, and delivered the four (4) paintings valued at One Hundred Fifty Thousand and 00/100 Dollars ($150,000.00) as agreed in the parties' contract of sale. He further contended that either during or immediately after the closing on the sale of the two aforementioned properties, Frank Gordon on behalf of Estates and Loos entered into a separate verbal bailment agreement, which provided that Estates obtained legal title to the artwork, and Loos shall retain physical possession of the artwork, in order for Loos to facilitate a sale of the artwork on Estates' behalf. Melillo emphasized that this bailment agreement was a separate agreement only between Estates and Loos and never involved either Melillo or Associates. On December 18, 1998, Judge Diase dismissed with prejudice Estates' claims against Defendants Melillo and Associates. Therefore, the only remaining claims in Estates' Complaint were against Defendant Loos.

In 1993, the case of *Mary Young Curtis v. Robert Melillo, Richard Loos, Nassau Estates Development Associates, Little Plantation Estates, Majestic Construction and John Campbell*, Civil No. 583/93 was filed in the Territorial Court, Division of St. Thomas and St. John, which involved the same Defendants as in this case, and named Little Plantation

Estates as a co-defendant.[4] In an Order dated September 2, 1998, Judge Soraya Diase entered partial summary judgment in favor of the Plaintiff Mary Young Curtis and against Defendants Melillo, Loos, and Associates. However, Judge Diase noted that a deficiency judgment could not be entered against Loos because of the pending bankruptcy proceeding. Estates filed a cross-claim against Melillo, Loos and Associates jointly, which contained similar allegations as in this case. Also, Melillo filed a cross-claim against Loos, which pertained to the issue of the verbal bailment agreement between Estates and Loos.

In an Order dated March 11, 1999, Judge Diase *sua sponte* consolidated the instant case (*Little Plantation Estates v. Loos*, Civil No. 926/92), with the case of *Mary Young Curtis v. Robert Melillo, et al.*, Civil No. 583/93, pursuant to FED. R. CIV. P. 42(a). Subsequently, in Case No. 583/93, Judge Diase dismissed Estates' claim against Melillo and Associates, basing the dismissal on the previous December 18, 1998 partial dismissal in this case, Civil No. 926/92.[5] Judge Diase also dismissed Melillo's cross-claim against Loos in both cases designated as Civil No. 926/92 and Civil No. 583/93. Therefore, the only remaining issues in both actions were Curtis and Estates' claims against Loos.[6]

A hearing was scheduled for November 30, 2001; however, Estates filed a Motion to Continue, and the case was continued until March 11,

---

[4] In addition to the four defendants named above, the Complaint also named Majestic Construction and John Campbell as co-defendants.

[5] In the December 18, 1998 Order for Civil No. 926/92, Judge Diase granted summary judgment in favor of Defendants Melillo and Associates. The Court found that the contract of sale was completely fulfilled, and the cash sum of Two Hundred Thousand and 00/100 Dollars ($200,000.00) was delivered at the closing, along with the required artwork. The Court further found that at the closing, Estates and Loos entered a separate verbal bailment agreement which provided that legal title to the artwork passed to Estates, while physical possession of the artwork remained with Loos in order to facilitate a sale. Finally, the Court found that Melillo and Associates were not part of this later agreement between Loos and Estates, and therefore, could not be held responsible for Loos' performance under the bailment agreement. Accordingly, the Court ordered that Melillo and Associates were entitled to summary judgment dismissing the claims against them.

[6] In the September 2, 1998 Order, the Court ordered Defendant John Campbell to file a cross-claim by September 30, 1998, failing which, his lien would be vacated of record. According to the Court's file, Defendant Campbell was served with the Order by mail, but he failed to take any further action. Consequently, in the March 11, 1999 Order, Defendant John Campbell's Notice of Construction lien filed against the real property was vacated of record, and the Court also dismissed Plaintiff Curtis' claim against him.

2002. In the interim, Estates filed a motion for summary judgment, seeking judgment against Loos for the return of the artwork identified as Item Numbers 10, 11, 13 and 14 on the Appraisal List to Estates, or in the event the artworks had been sold, that the proceeds from the sale be remitted to Estates. At the March 11, 2002 hearing, the matter was continued, pending receipt of Defendant Loos' bankruptcy discharge order and related documents. Essentially, the Court sought information on whether the four paintings were listed as part of Defendant Loos' assets in his bankruptcy proceedings. On May 15, 2002, copies of Loos' complete bankruptcy file were filed with this Court. A close inspection and scrutiny of the Summary of Schedules, Schedule B—Personal Property filed in Loos' bankruptcy case, discloses that Loos in fact did not list the four (4) paintings as assets subject to the bankruptcy proceedings. By not listing the four paintings in his bankruptcy case as part of his assets, Loos concedes that he does not own them. Specifically, on his bankruptcy filings, Loos marked "none" for the type of property "5. Books; pictures and other art objects; antiques' stamp, coin, record, tape, compact disc, and other collections or collectibles." Moreover, the paintings were not part of Loos' assets; therefore, they were neither subject to his creditors' claims nor subject to the jurisdiction or judgments of the bankruptcy court. Consequently, the paintings should not have been included in Loos' bankruptcy proceedings. Interestingly, Estates is listed on "Schedule F—Creditors Holding Unsecured Non-priority Claims" as having asserted a claim in the amount of $150,000.00 in the bankruptcy proceeding. The claim is also listed as "CUD," which means "contingent," "unliquidated," and "disputed."

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Federal Rules of Civil Procedure 56(c). In other words, "summary judgment may be granted if the movant shows that there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hospital*, 843 F.2d 139, 143 (3d Cir.), *cert. denied*, 488 U.S. 870, 109 S. Ct. 178, 102 L. Ed. 2d 147

(1988). Likewise, summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In considering a motion for summary judgment, a court must "draw[ ] all reasonable inferences from the underlying facts in the light most favorable to the non-moving party." *Battaglia v. McKendry*, 233 F.3d 720, 722 (3d Cir. 2000). (Quotations omitted). Similarly, when one party is unable to show a genuine issue as to a material fact on which that party bears the burden of proof at trial, judgment against that party is appropriate as a matter of law. *Department of Commerce v. United States House of Representatives*, 525 U.S. 316, 327, 119 S. Ct. 765, 772, 142 L. Ed. 2d 797 (1999). An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). What constitutes a material fact depends on the substantive law in the case. A fact is a material fact, if it might affect the outcome of the case, *Hoffman-Dombrowski v. Arlington Intern. Racecourse, Inc.*, 254 F.3d 644, 650 (7th Cir. 2001), or if under the substantive law the fact is essential to the proper disposition of the claim. *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.*, 259 F.3d 1226, 1231-1231 (10th Cir. 2001). "Summary judgment, an extreme remedy, cannot be entered unless the movant has established its rights to a judgment with such clarity as to leave no room for controversy, and the other party is not entitled to recover under discernible circumstances." *Battle v. Industrious*, 26 V.I. 83, 85 (Terr. Ct. 1991). However, "it may be granted if it appears from the record, after viewing all the evidence and factual inferences in the light most favorable to the non-moving party, that the moving party is entitled to judgment as a matter of law." *Id. See also Young Dental Manufacturing Company, Inc. v. Q3 Special Products, Inc.*, 112 F.3d 1137, 1141 (1997). Additionally, summary judgment is appropriate when the non-moving party has failed to make an adequate showing on an essential element of that party's case as to which that party has the burden of proof. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); *Waterhouse v. District of Columbia*, 353 U.S. App. D.C. 205, 298 F.3d 989 (2002). Lastly, the Court must satisfy itself that the evidence in the summary judgment record supports the relief sought. *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

## B. PROPERTY HELD BY DEBTOR-BAILEE IN BANKRUPTCY

■ ■ The issues are whether a bailor is entitled to recover property held, but not owned, by a debtor-bailee, even though the debtor-bailee files for bankruptcy, and whether in the bankruptcy proceeding the bailor's property is discharged in bankruptcy together with the debtor-bailee. This issue can be decided on an equally important sub-issue; namely, what property rights a bailee acquires, and a bailor retains at the creation or inception of a bailment. It is well settled under the Bankruptcy Act that absent state statutory enactment to the contrary, if property is in a debtor's hands as a bailee or agent at the time the debtor files for bankruptcy, the bankruptcy trustee holds it as a bailee, and the bailor or principal could recover the property or its proceeds from a sale of the same property. *In re Zwagerman*, 115 B.R. 540, 547 (W.D. Mich. 1990), *aff'd* 125 B.R. 486 (W.D. Mich. 1991). "[A] bailment occurs when property is [temporarily] is entrusted to a party ... for some purpose; upon the fulfillment of that purpose the property is 'redelivered to the person who delivered it, or otherwise dealt with according to his directions or kept until he reclaims it.'" *Glenshaw Glass Company v. Ontario Grape Growers' Marketing Board*, 67 F.3d 470, 475 (3d Cir. 1995) *quoting Smalich v. Westfall*, 440 Pa. 409, 269 A.2d 476, 480 (1970). "In order for a bailment relationship to exist, there must be delivery by the bailor to the bailee ... [and] an agreement to return the subject matter ..." 8A AM. JUR. 2D *Bailments* § 28 (2003). Similarly, an agency is a relationship arising from a contract, express or implied, by which one of the parties confides to the other party the transaction or management of some business or other activity in his name, or on his behalf, and whereby the other party assumes so to act and to render an account thereof. *Zwagerman*, 115 B.R. at 547. In both situations, title to the property remains in the bailor or principal, and the bailee or agent holds the property under the bailment or agency for the owners' benefit. *Id.*

■ "The filing of a bankruptcy petition creates an estate in bankruptcy. This estate, pursuant to [11 U.S.C. § 541(a)(1)], contains 'all legal or equitable interests of the debtor in property as of the commencement of the case." *Universal Bonding Ins. Co. v. Gittens*, 960 F.2d 366, 371 (3d Cir. 1992) *quoting* 11 U.S.C. § 541(a)(1). However, the estate does not include "property of others in which the debtor had some minor interest such as a lien or bare legal title." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.8, 103 S. Ct. 2309, 2314 n. 8,

76 L. Ed. 2d. 515 (1983). Accordingly, "[i]n a bailment relationship, title to the property remains in the bailor and since the [bankruptcy] trustee takes only the property rights which the debtor-bailee possessed, title to the property does not become a part of the debtor's estate." *Matter of Ralph A. Veon, Inc.*, 12 B.R. 186, 189 (W.D. Pa. 1981).

In *The Guild and Gallery Plus, Inc.*, 72 F.3d 1171, 1173 (3d Cir. 1996), the United States Third Circuit Court of Appeals determined that paintings in an art gallery's possession, that was acting only as bailee at the time the art gallery filed for bankruptcy, was not included in the "property of the estate," as defined by § 541(a)(1) of the Bankruptcy Code. "Property of the estate includes 'wherever located and by whomever held[,] ... all legal or equitable interests of the debtor in property as of the commencement of the case.'" *Id.* at 1179, quoting 11 U.S.C. § 541(a)(1). While examining the "expansive reach of [§ 541,]" the Court noted that "the scope of [§ 541(a)(1)] is broad. It includes all kinds of property, including tangible or intangible property, causes of action ... as well as property recovered by the trustee under section 542 ... if the property recovered is merely out of the possession of the debtor, yet remained 'property of the debtor.' *Id.* at 1179, *citing* S. Rep. No. 989, 95th Cong., 2d Sess. 82, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868. The Court also provided examples of property interests that do not fall within the scope of § 541, noting that 'Congress intended to exclude from the [debtor's] estate property of others in which the debtor had some minor interest such as a lien or bare legal title ... Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition.' *Id.* at 1179, *citing United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.10, 103 S. Ct. 2309, 2314 n.10, 76 L. Ed. 2d 515 (1983).

Relying on 4 COLLIER ON BANKRUPTCY, ¶ 541.08[2], at 42-43 (15th ed. 1995), the Court noted that the Gallery estate held the paintings as a bailee, and discussed the manner in which bailments should be analyzed under § 541:

> [I]t became well settled under the Bankruptcy Act that absent state statutory enactment to the contrary, if property was in the debtor's hands as bailee ..., the trustee held it as such, and the bailor ... could recover the property or its proceeds. Under the [Bankruptcy] Code, section 362 will automatically stay the bailor ... from divesting the debtor of possession, and the estate would include the debtor's rights under the bailment ...

*Id.* at 1179-1180.

Accordingly, the Court made an important distinction that likewise should be made in this case. The Court determined that "the debtor's rights under the bailment agreement, i.e. whatever funds [the bailor] owed to the estate pursuant to the bailment agreement, would fall within the definition of 'property of the estate.'" *Id.* at 1180. However, the bailor's property would not be part of the debtor's estate, "even under the expansive definition set forth in § 541 of the Bankruptcy Code." *Id.* The Court reasoned that the "estate had no security interest in the painting. Upon satisfaction of bailment agreement, the painting—which the estate never claimed as its own—had to be returned [to the bailor]." *Id.*

■ Importantly, Defendant Loos did not have any rights under the bailment agreement, because the parties did not agree that Loos would be compensated in any form for his involvement in facilitating the sale of the artwork. Moreover, neither Estates nor Frank Gordon owed Loos any payment, fees, or other emolument pursuant to the bailment agreement, because the parties entered into a gratuitous bailment; i.e. "a bailment for which the bailee receives no compensation." *See* BLACK'S LAW DICTIONARY 56 (7th ed. 1999). Therefore, Loos did not retain any rights that could conceivably fall within the definition of "property of the estate." Accordingly, the paintings were not the property of Loos' estate, because he did not own them or ha[ve] a security interest in the paintings. Therefore, the automatic stay provision in 11 U.S.C. § 362 is inapplicable to this case, because section 362 imposes an automatic stay on the bailor from divesting the debtor of possession of the property only when the debtor retains in the property certain rights, entitlement or ownership, either monetary, equitable, or otherwise, under the bailment contract.

Similarly, in *Matter of Ralph A. Veon, Inc.*, 12 B.R. 186, 189 (W.D. Pa. 1981), the United States Bankruptcy Court, Western District of Pennsylvania held that in a bailment, legal title to property remains in the bailor. Title to the property does not become a part of the debtor-bailee's estate, because the trustee takes only property rights which the debtor-bailee possessed. The Court determined that the nature of the relationships at issue was a bailment; and as such, the bailor may recover the property held by debtor as bailee. The Court examined the intent of the parties and concluded that the parties intended for title to the bonds to remain in the bailor. *Id.* at 189. Moreover, in this case the contractual

terms between the parties expressly and explicitly provided that the artworks were delivered to the bailee, on behalf of the bailor, for the sole purpose of effectuating a sale of the artwork.

Additionally, in the matter of *In re Zwagerman*, 115 B.R. 540, 547 (W.D. Mich. 1990) the United States Bankruptcy Court, Western District of New York also acknowledged the well-recognized and entrenched rules regarding bailments, and further addressed the situation in which a bailment would also give rise to an agency. "'Bailment,' in its ordinary legal signification, imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished." *Id.* at 547. The Court determined that in both agency and bailment situations, title to the property remains in the bailor or principal, and the bailee or agent holds the property under the bailment or agency for the owners' benefit. As such, if property was in a debtor's hands as bailee or agent, the trustee in bankruptcy held it as such, and the bailor or principal could recover the property or its proceeds. The Court determined the contracts and practice of the parties clearly indicated their intent.

In this case, there is nothing to suggest, inferentially or otherwise, that Defendants Loos and Melillo intended anything other than that legal title and ownership of the artworks be transferred to Estates at the real estate closing. Defendants initially delivered the artwork to Estates with the intent that the four (4) paintings, collectively valued at One Hundred Fifty Thousand and 00/100 dollars ($150,000.00), comprise the balance of the purchase price of Three Hundred Fifty Thousand and 00/100 dollars ($350,000.00), as delineated in the contract of sale. Furthermore, if Defendants had failed to deliver the paintings as agreed, a breach of the contract would have occurred. Even though this is not Loos' or Estates' contention, the Court is unable to find any compelling or persuasive evidence to suggest otherwise, or that a breach of contract would not have ensued.

The Court is without the benefit of a written document memorializing the terms of the bailment. However, in determining the parties' intent, the Court will consider the pleadings, motions and supporting affidavits. First, the affidavit of Thomas Meachum, representative of Estates, confirms that the nature of the agreement and relationship of the parties

103

was in fact a bailment. More importantly, in his *Affidavit In Support of Motion to Dismiss Complaint as Against Robert A. Melillo and Nassau Estates Development Associates and to Vacate Notice of Pendency* (dated August 20, 1996), Defendant Melillo also confirmed that at the closing, Defendants delivered the sum of $200,000.00 in cash, and the artwork valued at One Hundred Fifty Thousand and 00/100 dollars ($150,000.00), which constituted Defendants' full performance under the contract of sale. Thus, legal title to the artwork was categorically transferred to Estates at the time of the closing.

Melillo further asserted that at closing a verbal agreement was reached between Estates and Defendant Loos, to the effect that legal title to the One Hundred Fifty Thousand and 00/100 ($150,000.00) in artwork would immediately pass to Estates, and physical possession of the artwork would remain with Loos to facilitate a sale of the artwork on behalf of Estates. Importantly, at the closing the deed for the real properties was executed and delivered from Estates to Defendants. Therefore, it is obvious and undeniable that the parties intended for legal title and ownership of the artwork to be transferred to Estates. Further, it is irrefutable that the parties intended to create a bailment relationship by the redelivery of the same artwork to Loos, for the specific purpose of Loos effectuating a sale of the same artwork.

■ Defendant Loos has failed to submit any statutory law or case law, which supports the proposition that the artwork was in his possession in any capacity other than as bailee or agent, so that Estates would be precluded from asserting any entitlement to them. Furthermore, Defendant Loos has failed to invite the Court's attention to any statute, local or otherwise, that would offer Loos a valid defense to Estates' claim, nor has the Court found one. Consequently, the Court concludes that Loos had no interest, equitable or otherwise, in the artwork. Rather, the unavoidable conclusion is that he was solely a bailee for Estates. There are no facts that would suggest that the bailment would generate a benefit to Loos, considering that there was no direct or indirect compensation that would have devolved to him. Furthermore, there is no evidence, factual or circumstantial, that compensation for Loos was even contemplated or anticipated by the parties. Similarly, there is no evidence that Loos was owed any funds, fees or equitable benefit pursuant to or in consideration of the bailment that could conceivably be considered a part of Loos' estate. Lastly, there is no evidence that Loos had a security

interest, entitlement, or ownership interest in the artwork, other than a possessory interest tantamount to that of a caretaker. Upon satisfaction of the bailment, and completion of the sale, the proceeds from the sale of the artwork had to be remitted to Estates. To hold otherwise will create a disconcerting "unjust enrichment" to Loos, which was never contemplated by the bankruptcy law or by the parties' agreement.

## III. CONCLUSION

A bailment was created at the time the artwork was relinquished to Defendant, for the express and sole purpose of facilitating a sale on behalf of Estates. Thus, Loos enjoyed only a possessory interest of the artworks as bailee, while Estates retained legal title and sole ownership to the artworks or property as bailor and owner. Consequently, at the time Defendant filed for bankruptcy, title to the property remained in the bailor. The Court holds that when a bailment exists, a trustee in bankruptcy takes only the property and equitable rights which the debtor-bailee possessed at the time of the filing of bankruptcy, and the property does not become a part of the debtor's estate, because the trustee cannot acquire a greater interest than the debtor-bailee actually possessed. Therefore, Estates is entitled to recover the artwork, or in the event the artwork has been sold, the proceeds from the sale of them. Accordingly, Plaintiff's Motion for Summary Judgment is granted. An appropriate Order will follow.