Robert SPILSBURY, et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA, et al., Defendants.

No. CIV.A.02–0374 EGS.

United States District Court, District of Columbia.

March 10, 2004.

Haylie Michelle Iseman, Michael J. Eig, Michael J. Eig & Associates, PC, Chevy Chase, MD, Matthew B. Bogin, Futrovsky, Nitkin & Scherr, Chartered, Rockville, MD, for Plaintiffs.

Melvin W. Bolden, Jr., Office of the Corporation Counsel for DC, Washington, DC, for Defendants.

## *MEMORANDUM OPINION AND ORDER*

SULLIVAN, District Judge.

Plaintiffs are disabled children who are eligible for special education and related services under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 (2003). Defendants are the District of Columbia; the Superintendent of District of Columbia Public Schools; the Assistant Superintendent of District of Columbia Public Schools, Anne Gay; and the Director of Policy and Planning for District of Columbia Public Schools, Judith Smith, Esq. Pending before the Court are the parties' cross motions for summary judgment. The central issue is whether defendants (collectively "DCPS") have complied with the IDEA; specifically, whether DCPS has provided plaintiffs with a "free appropriate public education that emphasizes special education and related services designed to meet [plaintiffs'] unique needs." 20 U.S.C. § 1400(d)(1)(a); *see also Petties v. District of Columbia,* 238 F.Supp.2d 114, 116 (D.D.C.2002).

The plaintiff-students are currently enrolled at the McLean School, a non-public school serving children with learning disabilities, and their continued placement at McLean is not currently at issue.[1] Rather,

---

**1.** Plaintiffs originally filed this Complaint after DCPS sought to alter their educational placements at the McLean School, where they were receiving special education services. In the Spring of 2001, DCPS convened Building Level Multidisciplinary Team ("BLMDT") Meetings to determine plaintiffs' placements for the 2001–2002 school year, ultimately deciding that the students would be removed from McLean and placed in public schools. Plaintiffs, through their parents and guardians, objected to this change, and subsequently appealed the placement decisions. *See* 20 U.S.C. § 1415(f) (providing for a due process hearing when a parent objects to a change in educational placement). Plaintiffs then sought, and won, injunctive relief from this

plaintiffs argue that they are due reimbursement from DCPS for the cost of educating five students at McLean, costs plaintiffs have thus-far paid out of their own pockets.[2] Plaintiffs allege that defendants originally funded the educational services at issue, but in February of 2002 "abruptly ceased funding" plaintiffs' education, and that DCPS also advised McLean and plaintiffs' parents that it would seek return of previous funding for plaintiffs' education at McLean in 2001–2002. Pls.' Mot. for Summ. J. at 4. Plaintiffs thus seek reimbursement in the amount of $31,367.50,[3] as well as an order that DCPS cannot reclaim any payments made for the 2001–2002 school year. Defendants' cross-motion for summary judgment counters that Plaintiffs Bodnar, Shirk, and Spilsbury are not entitled to reimbursement for tutoring expenses, and that Plaintiff Bodnar is not entitled to reimbursement for psychological therapy.

Upon careful consideration of the motions, the responses and replies thereto, the oral arguments of counsel, as well as the governing statutory and case law, and for the following reasons, it is by the Court hereby **ORDERED** that plaintiffs' motion for summary judgment is **GRANTED**; and it is **FURTHER ORDERED** that defendants' motion for summary judgment is **DENIED**.

## I. STANDARD OF REVIEW

This case is before the Court on the parties' cross motions for summary judgment. Pursuant to Federal Rule of Civil Procedure Rule 56, summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See Fed.R.Civ.P. 56; Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Waterhouse v. District of Columbia,* 298 F.3d 989, 991 (D.C.Cir.2002). Likewise, in ruling on cross-motions for summary judgment, the court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *See Rhoads v. McFerran,* 517 F.2d 66, 67 (2d Cir.1975).

## II. ANALYSIS

The central issue before the Court is whether defendants have fulfilled their obligation under the IDEA, as well as this Court's Order granting injunctive relief, to provide a free public education to plaintiffs. The Court must determine whether plaintiffs are entitled to reimbursement for personal money spent on the students' education, and whether DCPS is entitled to reimbursement for what it now claims

Court in the form of IDEA "stay-put" protection at the McLean School. *See* March 8, 2002, Order (ordering DCPS to maintain plaintiffs' "current educational status," retroactive to the start of the 2001–2002 school year, during the pendency of further proceedings); *see also* 20 U.S.C. § 1415(j)(requiring that children shall remain in their current educational placements during the pendency of appeals).

2. Reimbursement is sought for Matthew Bodnar (tuition, tutoring, and psychological services); Cordell Critchell (books); George Labarraque (books); Leslie Shirk (books and

tutoring); and Robert Spilsbury (Tutoring). Pls.' Ex. 16.

3. Plaintiffs originally sought $33,792.50. This amount was reduced by plaintiffs' August 18, 2003, motion, in which plaintiffs advised the Court that defendants had paid $2425.00 to plaintiffs. This payment represented full reimbursement for Matthew Bodnar's 2001–2002 transportation and book expenses. Plaintiff Bodnar remains a plaintiff in the case, however, as plaintiffs contend that the $2425.00 did not reflect full and final payment on Bodnar's claim (tutoring, tuition, and psychological services costs remain).

were mistaken payments for plaintiffs' education for the 2001–2002 school year.

## A. *The IDEA*

■ The IDEA's purpose is to ensure that all children with disabilities are able to receive a free public education that is tailored to meet their specialized needs. To make certain that disabled children can truly access the educational services they require, the IDEA provides that a disabled child's parents, teachers, and other professionals annually confer and establish a written "individualized education program"("IEP") for each child. *See* 20 U.S.C. § 1401(11); 20 U.S.C. § 1414(d) (requiring that each IEP include a statement of needs, services, learning aids, and programs that should be made available to the student). After an IEP is developed, the school system is required to "provide an appropriate placement that meets those needs and, if appropriate public placement is unavailable, the school system must provide an appropriate private placement or make available educational-related services provided by private organizations to supplement a private placement." *Petties,* 238 F.Supp.2d at 116. If the school system proposes to fundamentally change a child's educational placement during this process, parents are entitled to challenge that change through an appeal process. 20 U.S.C. § 1415(f). During the pendency of such an appeal, the IDEA provides that the child will "stay-put"-that is, maintain her "current educational placement" until any appeal or ongoing litigation is resolved. 20 U.S.C. § 1415(j).

## B. *Plaintiffs' "Current Educational Placement"*

■ To resolve whether DCPS is required to fund the plaintiffs' McLean education, the Court must first determine whether McLean was each plaintiff's current educational placement, and thus the proper place for plaintiffs to remain during their appeal of the 2001–02 IEPs. The parties disagree on the issue of proper placement, in large part due to a dispute as to which IEPs-the 2000–01 IEPs or the 2001–02 IEPs-set forth plaintiffs' current educational placements. Plaintiffs posit that the 2000–01 IEPs control, whereas defendants argue that the 2001–02 IEPs (the IEPs challenged by plaintiffs) dictate the plaintiffs' current educational placements.

The 2001–02 IEPs proposed fundamental changes in plaintiffs' educational programs, namely removal from the McLean School. Plaintiffs made use of IDEA's procedural safeguards, challenged the implementation of the 2001–02 IEPs, and were awarded stay-put protection by this Court's March 8, 2002 Order. *See supra* note 1. Thus, because the students attended McLean prior to the development of the 2001–02 IEPs, plaintiffs continued to be enrolled at McLean School and to receive the educational services provided for in their previous (2000–01) IEPs.

However, DCPS refused to fund these services, arguing that the *2001–02 IEPs-*the challenged IEPs-dictate the students' placements and required educational services. In essence, defendants argue that the 2001–02 IEPs were developed prior to the commencement of the 2001–2002 school year, and thus control which educational services need to be provided during that school year. Since the 2001–02 IEPs proposed to remove plaintiffs from McLean, DCPS concludes that it is not required to fund placement, or associated services, at McLean.

Quite simply, defendants' argument that the 2001–02 IEPs control flies in the face of the IDEA's design and purpose; defendants essentially seek to eliminate the protections offered by the IDEA's stay-put provision. 20 U.S.C. § 1415(j). The stay-put provision is designed for precisely the

present situation-it allows parents to challenge a proposed change in their child's educational placement *"in advance of that change taking place ...." Petties*, 238 F.Supp.2d at 124 (emphasis added). While such an appeal is underway, the IDEA mandates that a disabled child remain at her current educational placement; plainly, "current educational placement" can only mean the student's placement before the proposed change.

It is undisputed that plaintiffs were enrolled at McLean immediately prior to DCPS's issuance of the challenged 2001–02 IEPs, thus establishing McLean as their current educational placements. Further, plaintiffs' motion for injunctive relief requested that the Court order defendants to "maintain all student-plaintiffs' current educational placements at the McLean School." This Court's grant of such injunctive relief solidly confirms that, pursuant to the IDEA, plaintiffs were to remain at the McLean School.

Moreover, the IDEA's procedural safeguards, specifically the stay-put protection, would be rendered worthless if the Court adopted defendants' theory. Plaintiffs would be forced to "stay-put" at a *new* school, under the dictates of the 2001–02 IEPs-*the very IEPs being challenged.* In attempting to alter the students' placements despite their parents' due process challenges to such changes, DCPS endeavors to make the very kind of "unilateral changes" expressly prohibited by the IDEA. *Petties*, 238 F.Supp.2d at 116. Accordingly, the Court is convinced that the 2000–01 IEPs establish McLean School as plaintiffs' current educational placements.

## C.  *Educational Services*

█ The only remaining question is which, if any, educational services plaintiffs were entitled to receive while enrolled at McLean School under the stay-put protection. Plaintiffs state, and defendants do not dispute, that their 2000–01 IEPs provided for the services at issue here (tuition, academic tutoring, mental health services, and book costs), and that plaintiffs received and DCPS funded these services during the 2000–2001 school year. Accordingly, plaintiffs argue that DCPS' refusal to fund these same services in 2001–2002, given that the 2000–01 IEPs remained in effect while the 2001–02 IEPs were challenged, violates the IDEA, and that plaintiffs are entitled to reimbursement for the students' education costs in 2001–2002.

Defendants have not challenged plaintiffs' assertions that the 2000–01 IEPs provided for these services; however, defendants argue that even if the McLean School is the current educational placement, this placement does not give rise to a DCPS obligation to fund the *services* provided for in the 2000–01 IEPs. While defendants' argument is unclear at best, they appear to be arguing for a narrow construction of "current educational placement"-namely, that the term only encompasses the literal school building. Defendants argue, "The record does not show that plaintiffs' [sic] challenged the educational programs contained in the April/May 2001 IEPs [the 2001–02 IEPs]. Rather ... plaintiffs' [sic] challenged only the placement in which the IEPs were to be implemented. In short, the accuracy of the programs contained in the IEPs is conceded." Defs.' Supplemental Mem. at 1–2.

Again, this argument flies in the face of the IDEA's purpose and spirit. First, defendants again erroneously argue that the *challenged* 2001–02 IEPs controls. Second, the IDEA clearly intends "current educational placement" to encompass the *whole range* of services that a child needs; the term "current educational placement" cannot be read to only indicate which

physical school building a child attends. *See, e.g., Bd. of Educ. of Cmty. High Sch. Dist. No. 218 v. Illinois State Bd. of Educ.,* 103 F.3d 545, 549 (7th Cir.1996) ("We accept as the outer parameters of 'educational placement' that it means something more than the actual school attended by the child."); *Erickson v. Albuquerque,* 199 F.3d 1116 (10th Cir.1999) (adopting the Seventh Circuit test). Indeed, the IDEA's codified purpose is to ensure that all disabled children receive appropriate education, including *"related services* designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A) (emphasis added). "Related services" include all "developmental, corrective, and other supportive services . . . as may be required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(22) (including transportation, psychological services, and counseling services). This recognition that an education program encompasses vastly more than a school's four walls is precisely why each IEP must contain "a statement of the special education and related services and supplementary aids and services to be provided to a child . . . ." 20 U.S.C. § 1414(d).

The IDEA's stay-put provision is triggered when a change in placement is proposed; "a fundamental change in, or *elimination of, a basic element of the educational program"* constitutes a change in placement. *Lunceford v. District of Columbia Bd. of Educ.,* 745 F.2d 1577, 1582 (D.C.Cir.1984) (emphasis added). Academic tutoring and mental health care are clearly basic elements of plaintiffs' educational programs. Elimination of these vital services formed the basis for plaintiffs' appeal, and triggered stay-put protection. To comply with the IDEA, DCPS must ensure that the students retain both their current placements *and* their current level of services while the proposed change is litigated, as " 'stay-put' obviously does not mean providing some of the same ser-

vices, but declining others, at DCPS's unilateral discretion." Pls.' Mot. for Summ. J. at 4.

Defendants have not challenged plaintiffs' assertions that the 2000–01 IEPs provided for the services for which plaintiffs now seek reimbursement. Thus, because the 2000–01 IEPs control which services plaintiffs should receive, it is clear that plaintiffs are entitled to remain at McLean and receive the full range of services provided for under the 2000–01 IEPs. As plaintiffs correctly conclude, "defendants were obligated to pay, were ordered to pay, and have violated the Court's orders by refusing to do so." *Id.* at 5.

### III. *CONCLUSION*

As set forth above, the Court finds that the McLean School was plaintiffs' current educational placement for the 2001–2002 school year, and that this placement includes the full realm of educational services provided for in the 2000–01 IEPs.

Accordingly, DCPS was required to fund plaintiffs' education at McLean during the pendency of the due process appeal, and this it has not done. Plaintiffs' parents, through the IEP process, concluded that McLean was the appropriate placement for their children; because of this choice, a choice protected by the IDEA, they have been forced to personally fund plaintiffs' education, effectively negating their right to a *free* public education. "The Act was intended to give handicapped children both an appropriate education and a free one; it should not be interpreted to defeat one or the other of those objectives." *Burlington v. Dep't of Educ. of Massachusetts,* 471 U.S. 359, 372, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985).

It is well-settled that the Court is empowered to grant retroactive reimbursement to parents faced with shouldering the costs to maintain their child's current educational placement during the appeal of a

placement change. *Id.* at 370–71, 105 S.Ct. 1996. Accordingly, for the reasons set forth above, it is hereby

**ORDERED** that plaintiffs' motion for summary judgment is **GRANTED**; and it is `

**FURTHER ORDERED** that defendants' motion for summary judgment is **DENIED**; and it is

**FURTHER ORDERED** that defendants are to reimburse plaintiffs for the remaining costs of plaintiffs' 2001–2002 placement at McLean school, including all associated educational services and including attorneys' fees and costs; and it is

**FURTHER ORDERED** that plaintiffs shall submit an itemized list of all expenses and attorneys' fees for which they seek reimbursement within 14 days of this order; and it is

**FURTHER ORDERED** that defendants are not entitled to reimbursement for any amounts previously paid for plaintiffs' placements at McLean for the 2001–2002 school year.